DAMIANO MUSCO, Respondent, *v.* UNITED SURETY COMPANY, Appellant.

Constitutional law — validity of chapter 185, Laws of 1907, regulating the taking of deposits for transmission to foreign countries.

Chapter 185 of the Laws of 1907, entitled "An act to regulate the taking of deposits by certain persons, firms and corporations," is constitutional in subjecting to regulation the particular class of persons designated by the statute. The regulation of the business of receiving deposits of money is plainly within the power possessed by the state to regulate the conduct of various pursuits, when necessary for the protection of the public. The statute does not improperly discriminate against the class of persons engaged in selling steamship tickets, who in conjunction with such business carry on the business of receiving deposits of money for future transmission to foreign countries, and in favor of others.

An individual may waive even a constitutional provision for his benefit, when no question of public policy or public morals is involved, and where a person, engaged in the business of selling steamship tickets to foreign countries, and desiring to carry on, in conjunction therewith, the business of receiving deposits of money for the purpose of transmitting it to foreign countries, gave, pursuant to chapter 185 of the Laws of 1907, a bond to the People of the state, with a surety, for the faithful holding and transmission of all moneys delivered to him for that purpose, he thereby waived the right to question the constitutionality of the statute, and his surety is estopped from raising that question in an action, thereafter brought against it, upon the principal's defalcation, by those who made deposits on the faith of the undertaking.

The fact that the statute provides that a person, who carries on the business of receiving deposits of money for transmission to foreign countries, without giving such bond shall be guilty of a misdemeanor, does not constitute a duress which relieves the principal and surety who executed the bond in question from the imputation of having voluntarily waived the invalidity, if any, of the statute.

The statute is not unconstitutional as infringing on the exclusive right of Congress to regulate foreign and interstate commerce. Although in a limited degree affecting interstate commerce, it is not for that reason a needless intrusion upon the Federal jurisdiction or strictly a regulation of interstate commerce, but is to be considered as an ordinary police regulation and, therefore, not invalid.
*Musco* v. *United Surety Co.*, 132 App. Div. 300, affirmed.

(Argued October 5, 1909; decided November 23, 1909.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 14, 1909, which reversed a judgment of Special Term overruling a demurrer to the answer and dismissing the complaint and sustained said demurrer.

The following question was certified : " Does the plaintiff's complaint set forth facts sufficient to constitute a cause of action ? "

The action was brought to recover on a bond executed by one Ferrara as principal and the appellant as surety pursuant to the provisions of chapter 185 of the Laws of 1907. The complaint in substance among other things alleged the execution of said bond by said principal and surety, whereby they bound themselves in the sum of $15,000, on the condition that if the said principal should " faithfully and diligently hold and transmit any, and all moneys, or the equivalent thereof which shall be delivered to them for transmission to a foreign country or countries as provided by * * * chapter 185 of the Laws of 1907, and duly account for and promptly pay over all moneys, or the equivalent thereof, received by him as aforesaid, then this obligation to be void ; " that between the date of execution of said undertaking and the commencement of this action various people delivered to said Ferrara various sums of money to be transmitted abroad and which he failed to transmit or account for, and the said people thereafter assigned their respective causes of action to the plaintiff. A copy of the undertaking attached to the complaint recites that said principal " is engaged in or is about to engage in the selling of steamship

or railroad tickets for transportation to or from foreign countries and in conjunction with said business, carries on or is about to carry on the business of receiving deposits of money for the purpose of transmitting the same, or the equivalent thereof, to foreign countries and is required to make, execute and deliver a bond pursuant to chapter 185 of the Laws of 1907," and it has been assumed in the argument of this case that said Ferrara was engaged in business as aforesaid and did come under the provisions of said act.

The appellant by its answer and the respondent by his demurrer thereto have presented the question whether the law requiring the execution of said bond is constitutional and such question is the one really involved in the general question submitted to us whether the complaint sets forth a cause of action.

*Edwin Blumenstiel* for appellant.    The statute under which this plaintiff is suing and under which this bond was given, to wit, chapter 185 of the Laws of 1907, is clearly unconstitutional. (*Matter of Brunswick* v. *Harvey*, 114 Ga. 733; *People ex rel. Tyroler* v. *Warden*, 157 N. Y. 116; *People* v. *Marcus*, 110 App. Div. 255; *People* v. *Williams*, 189 N. Y. 131; *Grossman* v. *Caminez*, 79 App. Div. 15; *Connolly* v. *U. S. P. Co.*, 184 U. S. 540; *B. U. Co.* v. *C. C. Co.*, 111 U. S. 746; *Cotting* v. *Godard*, 183 U. S. 79.)   A statute which is unconstitutional is void; bonds given thereunder are likewise null and void, and fall, and the surety sued in an action on said bonds can raise such defense. (*Vose* v. *Cockroft*, 44 N. Y. 415; *Brookman* v. *Hamill*, 46 N. Y. 636; *Coburn* v. *Townsend*, 37 Pac. Rep. 202; *Crum* v. *Wilson*, 61 Miss. 233; *P. Nat. Bank* v. *Mixter*, 124 U. S. 721; *Byres* v. *State*, 20 Ind. 47; *Post* v. *Doremus*, 60 N. Y. 371; *Ames* v. *Maclay*, 14 Iowa, 281; *Thomas* v. *Burns*, 23 Miss. 552; *U. S.* v. *Tingley*, 5 Pet. 115.)   Chapter 185 of the Laws of 1907 is unconstitutional in that it is in violation of the Federal Constitution, which provides that the United States Congress shall regulate foreign commerce. (*Crutcher* v.

*Kentucky*, 141 U. S. 47; *County of Mobile* v. *Kimball*, 102 U. S. 691; *People ex rel. P. R. R. Co.* v. *Wemple*, 138 N. Y. 12; *Welcome* v. *State of Missouri*, 91 U. S. 275; *Henderson* v. *Wickham*, 92 U. S. 257.)

*Nelson L. Keach* and *Achille J. Oishei* for respondent. The defendant, United Surety Company, is in no position to raise or test the constitutionality of the statute in question. (*Carlisle* v. *Saginaw*, 84 Mich. 134; *R. R. V. Nat. Bank* v. *Craig*, 181 U. S. 548; *Wiley* v. *Snikler*, 179 U. S. 58; *U. S.* v. *Moriarity*, 106 Fed. Rep. 886; *People* v. *B., F. & C. I. R. Co.*, 89 N. Y. 75; 8 Cyc. 787; *People ex rel. Henry* v. *Folke*, 89 App. Div. 171; *People* v. *Turner*, 49 Hun, 486; *Kansas City* v. *U. P. R. R. Co.*, 59 Kan. 427.) The statute in question is clearly constitutional. (*State of Indiana* v. *Richcreek*, 5 L. R. A. 874; *State* v. *Wickenhoefer*, 64 Atl. Rep. 273; *Matter of H. D. Co.*, 147 Fed. Rep. 538; *Williams* v. *Fears*, 179 U. S. 270; *Wright* v. *Hart*, 182 N. Y. 341; *Wynehamer* v. *People*, 13 N. Y. 391; *Phelps* v. *Racey*, 60 N. Y. 14; *Bertholf* v. *O'Reilly*, 74 N. Y. 521; *People ex rel. Farrington* v. *Mensching*, 187 N. Y. 21; *People ex rel. Armstrong* v. *Warden*, 183 N. Y. 225.) The statute in question relates in no way to foreign commerce. (*Magner* v. *Grima*, 8 How. [U. S.] 490; *Williams* v. *Fears*, 179 U. S. 270; *State ex rel. Beek* v. *Wagener*, 46 L. R. A. 442; *Hennington* v. *Georgia*, 163 U. S. 299.) A surety cannot avail himself of a defense personal to his principal. (*Keokuk* v. *Hall*, 106 Iowa, 540; *Hesser* v. *Steiner*, 5 W. & S. [Pa.] 476; *Goodell* v. *Bates*, 14 R. I. 65; *Kimball* v. *Newell*, 3 Hill, 116.)

Hiscock, J. Chapter 185 of the Laws of 1907 is entitled, "An act to regulate the taking of deposits by certain persons, firms and corporations." Amongst other things it provides (section 1): "All corporations, firms and persons now or hereafter engaged in the selling of steamship or railroad tickets for transportation to or from foreign countries, who in conjunction with said business carry on the business of

receiving deposits of money for the purpose of transmitting the same, or the equivalent thereof, to foreign countries, shall, before entering into said business, or before continuing said business, except as hereinafter provided, make, execute and deliver a bond to the people of the state of New York in the sum of fifteen thousand dollars, conditioned for the faithful holding and transmission of any money, or the equivalent thereof, which shall be delivered to it or them for transmission to a foreign country;" also (section 6), "This act shall not apply to drafts, money orders and travelers' checks issued by trans-Atlantic steamship companies or their duly authorized agents or to national banks, state banks or trust companies;" also, that a suit to recover on such a bond may be brought by or upon the relation of any party aggrieved; also, that any corporation, firm or person continuing in the business aforesaid, "contrary to the provisions of this act," shall be guilty of a misdemeanor.

The appellant as surety having executed an undertaking in accordance with the provisions of said act with and for a person engaged in receiving deposits as aforesaid, in this action brought in behalf of persons who made deposits with the principal after such undertaking was executed, which have not been accounted for, defends on the ground that said act is unconstitutional. It insists that the statute is unconstitutional, *first*, because it is an unjustifiable interference with the rights of citizens to carry on a legitimate business; *second*, because it unjustly discriminates between members of the same class, since it exempts steamship companies or their authorized agents in certain respects from the operation of the said statute; and, *third*, because it is in violation of the provisions of the Federal Constitution that Congress shall regulate foreign commerce.

We are of the opinion that these contentions cannot prevail; that, in the first place, the appellant is debarred from making them; and, secondly, that the objections, even if available to it, could not be sustained.

The appellant and its principal have waived any question

concerning the constitutionality of the act in question. That act in effect prohibited appellant's principal from carrying on the business of receiving deposits unless he should execute an undertaking as therein provided. Conversely, in effect, it authorized him to conduct such business if he should execute such a bond. He very well may have concluded that it would be to his advantage in the conduct of the business to give such an undertaking, whether he could be compelled so to do or not, and he executed one. Having done this, and respondent's assignors having made deposits with him, as we must assume, on the faith of such undertaking, neither he nor his surety can now raise the question of constitutionality, for it is well settled that an individual may waive even constitutional provisions for his benefit when no question of public policy or public morals is involved. (*Mayor, etc., of New York* v. *Manhattan Ry. Co.*, 143 N. Y. 1; Cooley's Constitutional Limitations [7th ed.], p. 250.)

If the principal could and did waive any question of constitutionality of the act, the appellant cannot raise such question, for certainly its position as a surety for a consideration is not any stronger than that of its principal.

Appellant seeks to break the force of an apparent waiver by its principal by insisting that the undertaking was executed under duress, the act providing that a person who carried on the business in question without executing such undertaking should be guilty of a misdemeanor. Assuming that the defense of duress in favor of the principal would be available to the appellant, we feel entirely clear that no such defense would exist in favor of such principal under the circumstances of this case. Counsel has called to our attention various familiar cases holding that a person executing an undertaking to release his person from custody or his goods from attachment is not to be regarded as having thereby waived any claim of invalidity of the act or process under which his body or property had been seized; that such custody, whether of person or property, constitutes a duress which relieves the party executing the undertaking from the

imputation of having voluntarily waived the invalidity. We are, however, not aware of any authority which would extend that doctrine to the present case. If the act requiring the principal to execute an undertaking was unconstitutional and void, he must be assumed to have known it at the time, and he was entitled to believe that no one would attempt to enforce against him an unconstitutional act. The mere possibility that some one in the future might attempt so to do was altogether too remote a consideration to operate as a coercive influence on his mind when he executed the undertaking which amounted to legal duress.

But, as stated, if the constitutionality of the statute in question were open to attack by appellant on the grounds stated by it, such attack could not succeed.

The regulation of the business of receiving deposits is plainly within the power possessed by the state to regulate the conduct of various pursuits when necessary for the protection of the public. We have no difficulty in approving as constitutional the action of the legislature in subjecting to regulation the particular class of people designated by the statute. We doubtless may take judicial notice of the public report made by the commission of immigration recently appointed by the Governor to inquire into the condition and welfare of aliens in this state, and by which report it appears that there has been a special disposition on the part of ignorant aliens to deposit for transmission abroad moneys with irresponsible persons who carried on the business of selling steamship tickets; that the latter branch of business naturally attracted the former branch, which resulted in widespread frauds upon and losses by the ignorant depositors. Even if we should ignore this report we might readily assume that the legislature had knowledge of the very conditions presented by it, and, therefore, were justified in selecting for regulation the class of persons whom it did select.

This statute in question is so entirely different in the nature of its provisions from the one absolutely prohibiting the sale of railroad tickets, except by a limited class of persons, which

30

was under consideration in the case of *People ex rel. Tyroler* v. *Warden of City Prison* (157 N. Y. 116), and which is especially relied upon by appellant, that we do not deem it necessary to occupy space in pointing out the difference.

The act does not improperly discriminate against the class to which appellant's principal belonged and in favor of others, because by the provision in section 6 thereof that it " shall not apply to drafts, money orders and travelers' checks issued by trans-Atlantic steamship companies or their duly authorized agents." It is quite probable that if necessary we could find sufficient reason to justify the legislature in distinguishing between trans-Atlantic steamship companies, almost necessarily possessing large capital and credit, and individuals of the class to which appellant's principal belongs who frequently might be expected to be without either. But it is not necessary to do this. When section 6 provided that the act should not apply to the things therein mentioned, it but declared what would have been the meaning and construction of the statute without any specific provision. On the face of the statute we should not interpret its provisions regulating the business of receiving deposits as applying to the sale and issue of drafts, money orders and travelers' checks. The former in the ordinary conduct of the business would involve quite different operations than those implied in the latter branch of business.

Really the only claim of unconstitutionality made by the appellant which seems to us to furnish any reasonable basis even for discussion is the one that this statute infringes on the exclusive right of Congress to regulate foreign and inter-state commerce, and of the conclusion to be reached in the discussion of that question we have no doubt.

If we assumed that persons designated in the act receiving deposits for transmission would ship the actual money and therefore might be said to be engaged in commerce, it still is apparent to us that the act was not passed for the purpose of regulating that branch of the business. It was passed for the purpose of regulating and safeguarding the business of receiv-

ing deposits, which is a business and transaction by itself preceding and not to be confounded for the purposes of this discussion with the later transmission of the money, although leading up to such transmission. The act is entitled "An act to regulate the taking of deposits," and it relates to those who in conjunction with the business of selling tickets "carry on the business of receiving deposits of money for the purpose of transmitting the same." It does not purport to affect those merely engaged in forwarding money or to regulate or prescribe the method in which the money shall be forwarded or transmitted. It applies to the act of receiving on deposit moneys to be transmitted some time in the future, and it is perfectly clear that great opportunity for fraud and loss would arise in connection with these deposits which were withdrawn from the observation and custody of the depositor on a promise at some time in the future to transmit them, and that it was the intent of the Legislature to guard against the embezzlement or loss even by ignorance on the part of the banker of these moneys pending the proposed subsequent transmission. The acts of receiving the deposits and of subsequently transmitting them although they may be related are still entirely distinct.

The authority amongst the cases called to our attention which seems most nearly to fit the facts in this case is that of *Williams* v. *Fears* (179 U. S. 270). That case presented for consideration the act of the state of Georgia whereby a specific tax was levied upon the occupation of "immigrant agent," meaning a person engaged in hiring laborers within the state, but to be transported and employed beyond its limits, and it was held that the levy of this tax did not amount to such an interference with the freedom of transit or of contract as to violate the Federal Constitution.

It is, doubtless, true that this statute regulating the receipt of deposits may incidentally and indirectly affect the business of transmitting moneys abroad. But it is well settled that the law, although in a limited degree affecting interstate commerce. is not for that reason a needless intrusion upon the Federal

jurisdiction or strictly a regulation of interstate commerce, but is to be considered as an ordinary police regulation and therefore not invalid. (*Hennington* v. *Georgia*, 163 U. S. 299.)

The order reversing the judgment overruling plaintiff's demurrer should be affirmed, with costs, and the question certified to us answered in the affirmative.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, VANN, WILLARD BARTLETT and CHASE, JJ., concur.

Order affirmed.