# ENGEL v. O'MALLEY.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 703. Argued December 15, 16, 1910.—Decided January 3, 1911.

The rule, that one not within the class cannot raise objections to the constitutionality of a statute on the ground of discrimination against that class, applied to effect that one who for more than five years has resided in the United States cannot object that a state statute denies equal protection of the law because it excludes those who have not so resided for that period.

Protection of banking business, especially that transacted in small amounts, (*Noble State Bank* v. *Haskell, ante,* p. 104), and with poor and ignorant immigrants on first arrival in this country is within the police power of the State; and a state statute imposing special and proper restrictions on those engaging in that class of banking is not unconstitutional under the due process or equal protection clauses of the Fourteenth Amendment because it excepts from its provisions other banks and bankers engaged in other classes of banking business or conducting them under other conditions.

The receipt of money by a bank where the depositor can withdraw it when and in such sums as he pleases, although creating a debt, is, in a popular sense, the receipt of money for safe-keeping.

Where the subject is within the police protection of the State, it is not for the court to determine whether the enactment is wise or not; that is within legislative discretion.

Courts will presume from general knowledge of business affairs that transmission of money through bankers is made by drafts and not by sending the identical currency.

Legislation which regulates business may well make distinctions depend upon the degree of evil; *Heath & Milligan Co.* v. *Worst,* 207 U. S. 338; and, although where size is not an index, a law may not discriminate between the great and the small, proper regulations based thereon where size is an index of the evil to be prevented, do not offend the equal protection clause of the Fourteenth Amendment.

There are always difficulties in drawing the dividing line between that which is within, and that which is without, the constitutional power of the States, and the question in each specific case must be answered by the pertinent facts therein.

A state statute regulating the receipt of deposits of money is not a burden on, or regulation of, interstate or foreign commerce simply because such deposits are likely to be transmitted to other States or foreign countries; the deposit is an independent transaction preceding the transmission.

The provisions of the private banking act of New York of 1910, considered in this case, are not unconstitutional as depriving persons engaged in the receiving and transmitting of small sums of money of their property without due process of law or denying them the equal protection of the law either on account of the regulations to which such persons are subjected or by reason of the exception of other classes of banks and bankers therefrom. '

THE facts are stated in the opinion.

*Mr. Charles Dushkind* for appellant:

The provision that deprives persons residing in the United States for less than five years of the right to carry on such business violates the Fourteenth Amendment. *Yick Wo* v. *Hopkins*, 118 U. S. 356.

A statute that is repugnant to the Constitution is not voidable by judicial decisions but is absolutely void. *Norton* v. *Shelby County*, 118 U. S. 441; *Ex parte Young*, 209 U. S. 129.

It is self-operating; it has no legal inception and never had a legal existence. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 558; see also *Tyler* v. *Judges*, 179 U. S. 405; *Hooker* v. *Burr*, 194 U. S. 415; *Turpin* v. *Lemon*, 187 U. S. 51; *William* v. *Eggleston*, 170 U. S. 304; *Hatch* v. *Reardon*, 204 U. S. 152; *Albany County* v. *Stanley*, 105 U. S. 305; *Southern Pacific R. R. Co.* v. *King*, 217 U. S. 534.

The statute is unconstitutional because it gives the Comptroller arbitrary power to deprive appellant of his right to carry on his business. *Yick Wo* v. *Hopkins*, 118 U. S. 356, citing *Baltimore* v. *Radecker*, 49 Maryland, 217. *Gundling* v. *Chicago*, 177 U. S. 183, and *Lieberman* v. *Van de Carr*, 199 U. S. 552, distinguished.

The statute is repugnant to the Fourteenth Amendment, because it contains unjust discriminations. · *Cotting* v. *Godard*, 183 U. S. 79; Cooley, Const. Law, 556; *Corn* v. *Clark*, 195 Pa. St. 634; *State* v. *Gravette*, 65 Ohio, 289; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Magoun* v. *Ill. Trust Co.*, 170 U. S. 283; *Am. Sugar Ref. Co.* v. *Louisiana*, 179 U. S. 89. Cases upholding classifications as to sale of liquor; territorial classifications; those in respect to the learned professions; health laws or taxation, cannot be applied in the case at bar.

The right to engage in the banking business is a common law right belonging to individuals and to be exercised at their pleasure, and the State may simply regulate it; the business is inherently a lawful one that may be carried on by anyone subject only to such reasonable regulations as may be provided by statute. It has no relation to public health nor to public morals, and there is indeed a wide distinction between the banking business and the occupations where public health or public morals is involved. *Butchers' Union* v. *Crescent City*, 111 U. S. 746; *Bank of Augusta* v. *Earle*, 13 Pet. 519

"Private banker" denotes a person engaged in banking without having special statutory privileges. Section 302, c. 409, Laws of 1882, N. Y., Ch. 236, Laws of 1888; 1 Rev. Stat. 712, § 6; *Perkins* v. *Smith*, 116 N. Y. 441. In *Musco* v. *United Surety Co.*, 196 N. Y. 459, there was no discrimination within the same class.

Hostile discriminations against any class as singled out by this act, has been repeatedly condemned by this court. *Pembina Min. Co.* v. *Pennsylvania*, 125 U. S. 181; *Gulf, Col. &c. R. R. Co.* v. *Ellis*, 165 U. S. 150, 153.

Circumstances and conditions that led to the enactment of the law cannot be considered on the question as to the constitutionality of the law. *Doyle* v. *Cont. Ins. Co.*, 94 U. S. 535; *Legal Tender Cases*, 12 Wall. 457; *Sturges* v. *Crowninshield*, 4 Wheat. 122.

The statute is violative of the commerce clause of the Constitution because it attempts to regulate interstate and foreign commerce. *Mobile County* v. *Kimball,* 102 U. S. 691, 702; Pomeroy on Const. Law, § 378; Cooley on Const. Law, 7th ed., 688; *Leisy* v. *Hardin,* 135 U. S. 100; *Wabash & St. Louis R. R. Co.* v. *Illinois,* 118 U. S. 557.

The statute in this case not only attempts to regulate interstate commerce, but it imposes a tax by way of a license fee as a condition for carrying on the business of transmitting moneys to foreign countries. *Brown* v. *Maryland,* 12 Wheat. 419; *Cook* v. *Pennsylvania,* 97 U. S. 566. See cases as to tax on transportation of goods from one State to another by rail, *State Freight Tax,* 15 Wall. 232; *Fargo* v. *Michigan,* 121 U. S. 230; *Phila. S. S. Co.* v. *Pennsylvania,* 122 U. S. 326; *State* v. *Woodruff &c. Co.,* 144 Indiana, 155; *Pickard* v. *Pullman &c. Co.,* 117 U. S. 34; on capital stock of ferry corporation, *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196; on telegraph message sent out of the State, *Telegraph Co.* v. *Texas,* 105 U. S. 460; *Ratterman* v. *W. U. Tel. Co.,* 127 U. S. 411; on agents engaged in selling railroad tickets, *McCall* v. *California,* 136 U. S. 104; *Telegraph Co.* v. *Texas,* 105 U. S. 460; *Ratterman* v. *W. U. Tel. Co.,* 127 U. S. 411; *Leloup* v. *Port of Mobile,* 127 U. S. 640; *International Text Book Co.* v. *Pigg,* 217 U. S. 93; *Western Union Tel. Co.* v. *Pendleton,* 122 U. S. 347, 356; *Butler Bros. Co.* v. *Rubber Co.,* 156 Fed. Rep. 1, 17.

*Mr. Louis Marshall,* with whom *Mr. E. N. Letchworth* and *Mr. Theodore Connoly* were on the brief, for appellee:

The act does not deprive the complainant of his liberty or property without due process of law, but seeks merely to regulate the business in which he is engaged, which affects the public welfare to an important extent, by imposing reasonable safeguards, dictated by experience and found necessary for the protection of those dealing with private

bankers of a class to which the complainant belongs. *Armstrong* v. *Warden of the City Prison*, 183 N. Y. 223, 226; *Musco* v. *United Surety Co.*, 132 App. Div. 300; aff'd in 196 N. Y. 459.

For other recent legislation regulating various occupations, or imposing special taxes or conditions on, and hampering or affecting them, see as to oleomargarine, *Powell* v. *Pennsylvania*, 127 U. S. 678; *Plumley* v. *Massachusetts*, 155 U. S. 461; as to spirituous liquors, *Giozza* v. *Tiernan*, 148 U. S. 657; *Gray* v. *Connecticut*, 159 U. S. 74; as to mine inspection, *Holden* v. *Hardy*, 169 U. S. 366; as to refining sugar and molasses, *Am. Sugar Co.* v. *Louisiana*, 179 U. S. 89; as to emigrant agents, *Williams* v. *Fears*, 179 U. S. 270; as to other purposes, *Clark* v. *Titusville*, 184 U. S. 329; *St. Louis Coal Co.* v. *Illinois*, 185 U. S. 203; *Reduction Co.* v. *Sanitary Reduction Works*, 199 U. S. 306; *Gardner* v. *Michigan*, 199 U. S. 325; *Wilmington. Mining Co.* v. *Fulton*, 205 U. S. 60; *Cox* v. *Texas*, 202 U. S. 446; *Gundling* v. *Chicago*, 177 U. S. 183; *Austin* v. *Tennessee*, 179 U. S. 343; *Booth* v. *Illinois*, 184 U. S. 425; *Dent* v. *West Virginia*, 129 U. S. 114; *Hawker* v. *New York*, 170 U. S. 194; *Watson* v. *Maryland*, 218 U. S. 173; *Smith* v. *Alabama*, 124 U. S. 465; *W. W. Cargill Co.* v. *Minnesota*, 180 U. S. 452; see also *Nechumcus* v. *Warden of City Prison*, 144 N. Y. 529; *Tenement House Dept.* v. *Moeschen*, 179 N. Y. 325; *Health Dept.* v. *Rector*, 145 N. Y. 32; *Grand Rapids* v. *Brandy*, 105 Michigan, 670; *S. C.*, 32 L. R. A. 116.

As to legislation directly relating to the subject of private banking, see *Attorney General* v. *Utica Ins. Co.*, 2 Johns. Ch. 375, and 15 Johns. 358; *Curtis* v. *Leavitt*, 15 N. Y. 952; *Perkins* v. *Smith*, 116 N. Y. 444; *Bank of Augusta* v. *Earle*, 13 Pet. 519, 596; *Blaker* v. *Hood*, 53 Kansas, 499; *Youngblood* v. *Birmingham Trust Co.*, 95 Alabama, 521; *Indiana* v. *Richcreek*, 77 N. E. Rep. 1085; *Goodsill* v. *Woodmansee*, 1 N. Dak. 246; *South Dakota* v.

*Scougal,* 3 S. Dak. 55; Tiedeman, Pol. Pow., p. 290; *Weed v. Bergh,* 124 N. W. Rep. 664; *Maclaren* v. *State,* 124 N. W. Rep. 667.

The public nature of the banking business has been recognized, and the duty exists on the part of the State to protect those dealing with banks and bankers. New York Banking Law, §§ 14, 76; *People* v. *Provident Assn.,* 161 N. Y. 492; New York Ins. Law, §§ 13–17; New York Liquor Tax Law, § 16; General Corporation Law, § 22.

There is no merit in the attack on this legislation based on the claims that the right to a license depends on five years' residence in the United States and that the Comptroller is vested with discretionary power with respect to the granting of licenses; but complainant being a citizen who has carried on business in the State of New York for upwards of twenty years, cannot raise this question. *Southern Pacific Co.* v. *King,* 217 U. S. 534; *Williams* v. *Eggleston,* 170 U. S. 304; *Tyler* v. *Judges of Registration,* 179 U. S. 405; *Turpin* v. *Lemon,* 187 U. S. 51, 60; *Hooker* v. *Burr,* 194 U. S. 415; *Worcester* v. *Worcester Con. St. Ry. Co.,* 196 U. S. 538; *Hatch* v. *Reardon,* 204 U. S. 152, 160.

One whose rights or liabilities are not affected by a statute cannot question its constitutionality. *Albany County* v. *Stanley,* 105 U. S. 305; *National Bank* v. *Craig,* 181 U. S. 548; *Oil Co.* v. *Texas,* 217 U. S. 114; *Wiley* v. *Sinkler,* 179 U. S. 58; *Chadwick* v. *Kelley,* 187 U. S. 540.

The provision in the act, to the effect that, after notice of application for a license has been posted, the Comptroller may, in his discretion, approve or disapprove the application, does not confer the arbitrary power of rejection. The discretion conferred is a legal discretion, which must be reasonable. Cases *supra.*

Discretionary power may be vested in administrative boards, *Crowley* v. *Christensen,* 137 U. S. 92; 2 Willoughby on Const. 1294. The discretion conferred on the Comptroller cannot be exercised capriciously. Section 26 of act;

*Munday* v. *Fire Commissioners,* 73 N. Y. 445; *Mayor* v. *Nichols,* 79 N. Y. 582.

The act does not deprive the complainant and those similarly situated of the equal protection of the law. The exceptions contained therein constitute a legitimate exercise of the right of classification. All persons coming within the class to which the complainant belongs are accorded like treatment, and there is no discrimination among the members of any of the classes affected.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity to prevent the carrying out of Chapter 348 of the Laws of New York for 1910, which forbids individuals or partnerships to engage in the business of receiving deposits of money for safe keeping or for the purpose of transmission to another or for any other purpose without a license from the Comptroller. The requirements for obtaining the license, so far as they affect the plaintiff, are that the applicant shall deposit ten thousand dollars with the Comptroller and present a bond with a penalty of not more than fifty thousand or less than ten thousand dollars, to be fixed by the Comptroller, conditioned upon the faithful performance of the duties undertaken. After notice shall have been posted for two weeks the Comptroller may approve or disapprove the application in his discretion, and licensees are to pay a fee of fifty dollars. § 25. The license is revocable at all times by the Comptroller for cause shown. § 26. Carrying on the business specified, or using the word 'banking' or 'banker' on signs, letterheads or advertisements in connection with any business, without a license, is made a misdemeanor. § 27. The foregoing provisions do not apply to any corporation or 'individual banker' authorized to do business under the banking law, or to national banks; to any hotel keeper who shall receive money for safe-keeping from a

guest; to any express or telegraph company receiving money for transmission; to individuals or partnerships where the average amount of each sum received on deposit or for transmission in the ordinary course of business shall have been not less than five hundred dollars during the fiscal year preceding an affidavit to that effect; or, finally, to any individual or partnership filing a bond approved by the Comptroller for one hundred thousand dollars when the business is in a city having a million inhabitants, or, if elsewhere, for fifty thousand dollars; or money, or securities that the Comptroller approves. § 29*d.*

The plaintiff alleges that he is a citizen of the United States and has been engaged in the business specified in the statute for twenty years; that by good reputation and considerable expenditure he has made his business of great value, and that it chiefly consists in receiving deposits in very small sums from time to time until they reach an amount sufficient to be sent to other States and mainly to foreign countries. The plaintiff further alleges that he has not the means that would enable him to make the deposit and give the bond required, and that the enforcement of the law against him will compel him to close. He avers that the statute is unconstitutional as against him under the Fourteenth Amendment and under the commerce clause of the Constitution of the United States. Article I, § 8. The bill was demurred to and the demurrer was sustained by the Circuit Court.

The first objection urged by the plaintiff in argument is to a requirement that we have not mentioned, that the applicant must have been continuously for five years immediately preceding his application a resident of the United States. As the plaintiff alleges that he satisfies this requirement, he has nothing to complain of. And therefore, without intimating any doubt as to the validity of the clause, we pass at once to the matters in which he is concerned. *Southern Ry. Co.* v. *King,* 217 U. S. 524,

534. As a preliminary to his argument the plaintiff denies
that he is in any sense a banker, and even goes so far as to
treat the receipt of money for safe keeping or transmission
within the meaning of the act as a case of bailment in
which the very coins received must be returned or sent on.
Of course this is not a true construction of the statute, as
is sufficiently indicated by the title "Private Banking."
The receipt of money by a bank, although it only creates a
debt, is in a popular sense the receipt of money for safe
keeping, since the depositor can draw it out again at such
time and in such sums as he chooses. It is safe to assume
that the transmission of money contemplated very gen-
erally is accomplished by a draft, and practically never by
sending on the identical currency received. One form at
least of the business aimed at and, on the face of the bill,
that carried on by the plaintiff, is a branch of the bank-
ing business. Furthermore, it is a business largely done
with poor and ignorant immigrants, especially on their
first arrival here.

We presume that the money deposited with the plain-
tiff is not drawn upon by checks, so that a part of the argu-
ment in *Noble State Bank* v. *Haskell*, just decided, *ante*,
p. 104, may not apply. On the other hand, experience has
shown that the protection of such depositors against
fraud, which is the purpose running through the statute,
is especially needed by at least that class of them with
whom the persons hit by the statute largely deal. The
case cited establishes that the State may regulate that
business and may take strong measures to render it secure.
It also establishes that the plaintiff has no such constitu-
tional right to carry it on at will as to raise him above
state laws not manifestly unfit to accomplish the supposed
end, greatly in excess of the need, or arbitrary and capri-
cious in discrimination. The *quasi*-paternal relations
shown in argument and by documents to exist between
those following the plaintiff's calling and newly-arrived

immigrants justifies a supervision more paternal than is needed in ordinary affairs. Whether the court thinks them wise or not such laws are within the scope of the discretion which belongs to legislatures and which it is usual for them to exert.

This appeal seems to have been taken upon the notion that the plaintiff had a business which, under the Fourteenth Amendment, the State could not touch. But although cut off from that broad proposition, his counsel presents other more specific objections to the act with earnestness and force. It is said that even if the plaintiff could furnish the money and bond required, the Comptroller might refuse a license upon his arbitrary whim. No guides are given in § 25 for the discretion that he is to exercise, and a provision in § 29e that nothing in the article shall be construed to require the Comptroller to make any inquiry as to the solvency of any applicant is thought to exclude solvency as the test and to leave the matter at sea. We do not so understand the purpose and purport of § 29e, and should suppose that the discretion to be exercised in the refusal to grant the license under § 25 was similar to that exercised under § 26 in revoking one; and that in each case the Comptroller was expected to act for cause. But the nature and extent of the remedy, if any, for a breach of duty on his part we think it unnecessary to consider; for the power of the State to make the pursuit of a calling dependent upon obtaining a license is well established, where safety seems to require it, and what we have said before sufficiently indicates that this calling is one to which the requirement may be attached. See *Gundling* v. *Chicago*, 177 U. S. 183. *Lieberman* v. *Van de Carr*, 199 U. S. 552.

Again, it is argued that the statute makes unconstitutional discriminations by excepting the classes mentioned in § 29d above, especially those in whose business the average amount of each sum received is not less than $500

and those who give a bond of $100,000 or $50,000.   But the former of these exceptions has the manifest purpose to confine the law as nearly as may be to the class thought by the legislature to need protection, and the latter merely substitutes a different form of security, as it well may. "Legislation which regulates business may well make distinctions depend upon the degree of evil." *Heath & Milligan Mfg. Co.* v. *Worst,* 207 U. S. 338, 355, 356.   It is true, no doubt, that where size is not an index to an admitted evil the law cannot discriminate between the great and small.   But in this case size is an index.   Where the average amount of each sum received is not less than five hundred dollars we know that we have not before us the class of ignorant and helpless depositors, largely foreign, whom the law seeks to protect.   See *Musco* v. *United Surety Co.,* 196 N. Y. 459, 465.   *McLean* v. *Arkansas,* 211 U. S. 539, 551.

We come to the final objection that this statute is an attempt to regulate commerce with other States.   When, as in this matter, the Constitution takes from the States only a portion of their otherwise absolute control, there may be expected difficulties in drawing the dividing line, because where it shall be put is a question of more or less. The trouble is inherent in the situation, but it is the same in kind that meets us everywhere else in the law.   The question is whether the state law creates a direct burden upon what it is for Congress to control, and the facts of the specific case must be weighed.   In doing so we recur to what we have said above, that we cannot regard the statement of the plaintiff's business in his bill as describing the receipt of bailments for the transmission of the identical objects received to other States.   Neither do we regard the law as having had such bailments primarily in mind. Under the statement in the bill and the words of the law, we must take it that the money received even when received for transmission becomes the money of the de-

positary and his obligation that of a debtor under contract to pay as may be directed. Presumably the depositor retains the right to call for his money himself or to change any direction that may have been given, until the money has left the 'private banker's' hands. The law, as was said of a similar one by the New York Court of Appeals, was passed for the purpose of regulating and safeguarding the business of receiving deposits, which precedes and is not to be confounded with the later transmission of money, although leading to it. *Musco* v. *United Surety Co.*, 196 N. Y. 459, 466, 467. The fact that it is very likely to lead to it does not change the result. *Diamond Glue Co.* v. *United States Glue Co.*, 187 U. S. 611, 616. The case is similar in principle to *Ware & Leland* v. *Mobile County*, 209 U. S. 405, where the nearest cases on the other side are distinguished. See further *Williams* v. *Fears*, 179 U. S. 270. We are of opinion that the commerce clause of the Constitution is not infringed, and on the whole case that the decree of the Circuit Court was right.

*Decree affirmed.*