CHARLES S. WILSON, as Commissioner of Agriculture of the State of New York, Respondent, *v.* JOSEPH ISRAEL, Defendant, GLOBE INDEMNITY COMPANY, Appellant, and COLD SPRING CO-OPERATIVE CREAMERY ASSOCIATION OF ROXBURY, NEW YORK, Respondent.

Agricultural Law — construction and application of section 55 — a creamery association organized under the Business Corporations Law not a "producer" within meaning of statute.

A creamery association organized under the Business Corporations Law (Cons. Laws, ch. 4), the largest part of the business of which consists of buying milk and cream for sale, is not a "producer" of milk or cream within the meaning of section 55 of the Agricultural Law (Cons. Laws, ch. 1). Hence the commissioner of agriculture was not authorized to take and enforce for the benefit of· such an association the bond which is required by section 55 of that act, having the condition that a licensee thereunder to sell milk or cream shall pay all amounts due to those who have sold milk or cream to him. The language means "producers" who have sold to the licensee, and those only.

*Wilson* v. *Israel*, 185 App. Div. 816, reversed.

(Argued October 13, 1919; decided January 6, 1920.)

APPEAL from a judgment, entered January 28, 1919, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term without a jury and directing judgment in favor of plaintiff.

The nature of the action and the facts, so far as material, are stated in the opinion.

*James A. Foley* and *Robert M. McCormick* for appellant. The Cold Spring Co-operative Creamery Association is a business corporation engaged in the buying and selling of milk and is not a producer of milk within section 55 of the Agricultural Law and the bond of the Globe Indemnity Company does not cover its claim against Joseph Israel, the licensee. (*Monroe Dairy Assn.* v. *Webb*, 40 App. Div. 49; *Matter of White*, 118 App. Div. 869; *Matter of Watson*, 171 N. Y. 256; *Matter of Moses*, 135 App. Div. 525; *Matter of De Peyster*, 210 N. Y. 216; *Matter of Rockefeller*, 177 App. Div. 786; *People ex rel. W. & H. St. R. Co.* v. *Miller*, 181 N. Y. 328.)

*Charles D. Newton*, Attorney-General (*Robert P. Beyer* of counsel), for plaintiff, respondent. The Cold Spring Co-operative Creamery Association of Roxbury, N. Y., is a producer of milk as said term is implied in section 55 of the Agricultural Law. (*Tonnele* v. *Hall*, 4 N. Y. 140; *People* v. *Essex County Supervisors*, 70 N. Y. 228; *People* v. *Lacombe*, 199 N. Y. 43; *Jewell* v. *City of Ithaca*, 72 App. Div. 220; *Glason* v. *Rothschild*, 220 Mo. 186; *People ex rel. Braburn Association* v. *Hanking*, 154 App. Div. 679; 207 N. Y. 761; *People ex rel. Urban Water Supply Co.* v. *Connelly*, 164 App. Div. 163; *Pardy* v. *Boomhower Grocery Co.*, 176 App. Div. 347; *People* v. *Beakes Dairy Co.*, 222 N. Y. 416; *Huson* v. *Brown*, 9 Misc. Rep. 175; *Monroe Dairy Assn.* v. *Webb*, 40 App. Div. 49.) The terms of the bond require payment of all amounts due for the sale of milk and cream to the licensee during the period covered by the license. (*Matter of Adler*, 76 App. Div. 571; 174 N. Y. 287; *Quigley* v. *Thatcher*, 144 App. Div. 710; 207 N. Y. 66.)

*Charles R. O'Connor* for defendant, respondent. The defendant Cold Spring Co-operative Creamery Associ-

ation of Roxbury, N. Y., is a producer of milk within the meaning of the statute. (*People* v. *Beakes Dairy Co.*, 179 App. Div. 942.) The condition of the bond in suit entitles the plaintiff to recover even though the defendant creditor be not a producer. (*People* v. *Lacombe*, 99 N. Y. 43.)

HISCOCK, Ch. J.   This action is brought by the plaintiff in his official capacity to recover for the benefit of the respondent Cold Spring Co-operative Creamery Association on a bond given by the appellant corporation conditioned for the payment by one Israel of amounts due to the Creamery Association for milk and cream purchased from it. The bond was executed under the assumed authorization of section 55 of the Agricultural Law (Cons. Laws, ch. 1) which permits such a bond to be taken for the benefit of "producers" of milk and cream and the determinative question to be considered is the one whether the Creamery Association was a "producer" of milk within the meaning of that section.

This association, so called, was a corporation organized under the Business Corporations Law (Cons. Laws, ch. 4) with a capital stock of $4,000 and all of which, with the exception of a one-half share, was held by its patrons. By its articles of incorporation it was organized for the purpose of owning and operating a creamery and for the purpose of "purchasing, manufacturing, selling, and dealing in milk, cream, butter, cheese, and other dairy products." It did some manufacturing of cheese, but apparently the largest portion of its business consisted in buying milk and cream which it marketed in New York city. About ninety per cent of the persons from whom it took milk and cream were its stockholders. It paid these respectively each month in cash for the deliveries of the preceding month and it collected the proceeds of the milk and cream which it sold. After deducting the expense of running the business and losses, and reserving the necessary

amount with which to pay a dividend of six per cent upon its capital stock, it then distributed the balance of its receipts on a fixed basis amongst those from whom it had purchased. It kept no cows and received and had no milk except through the methods above mentioned.

Amongst the persons to whom it sold milk and cream was one named Israel and in his behalf there was executed by the appellant corporation the bond upon which this action is based. That bond, as has been stated, was exacted and taken by the commissioner of agriculture under the assumed authority of section 55, and upon the provisions of that section must rest the right to take and enforce it for the benefit of the Creamery Association in this action. We turn to these provisions to search for the authority.

Omitting many provisions which are inconsequential here we find the following ones which are material: " No person * * * shall buy milk or cream within the state from *producers* for the purpose of shipping the same to any city for consumption * * * unless such person * * * be duly licensed." Provision is then made for setting forth in the application to be filed for a license various particulars and the conditions are prescribed under which a license may be issued. Amongst others is the one " A license shall not be issued as provided in this section * * * unless the applicant for such license shall file with the application a good and sufficient surety bond, * * * in a sum not less than five thousand dollars * * *. The bond required to be filed hereunder shall be given to the commissioner of agriculture in his official capacity and shall be conditioned * * * for the payment of all amounts due to persons who have sold milk or cream to such licensee, during the period that the license is in force." From these provisions it will be seen that the statute is enacted for the protection of " producers;" that no one is permitted to buy milk or cream from them without securing a license,

and that no license can be issued — with exceptions not material here — unless a bond shall have been executed for the payments of all amounts due to persons who have sold milk or cream.

On these facts and under this statute we do not think that it can be held that the Creamery Association was a " producer " of milk or cream and, therefore, the commissioner of agriculture was not authorized to take for its benefit and now enforce the undertaking in question. It is true, as suggested at the Appellate Division, that the bond is conditioned, amongst other things, for the payment of all amounts due to persons who have " sold " milk or cream to the licensee, and these words literally interpreted would include the Creamery Association. We believe, however, that these words must be construed in connection with and limited by the purpose of the section and the language used elsewhere. A few words cannot be detached from all the rest of the section for purposes of construction. The persons who are to be protected by the bond executed under the section are producers. A person is not permitted to buy from that class without executing this bond, and when the condition of the bond in accordance with the language of the statute is that the licensee shall pay all amounts due to those who have sold to him, we think that the language clearly means producers who have sold to him and who are the only ones intended to be safeguarded by the statute.

As we thus come to the ultimate question of the meaning of the word " producer " we are not unmindful that a liberal construction should be given to the statute for the purpose of securing protection to those who were contemplated by the legislative mind, and we may even assume for the purposes of this discussion that this corporation was organized for the general purposes of facilitating the marketing of milk and cream by those who were the producers and that to that extent and in that way it was their agency. Nevertheless we do not

see how we could hold that it was a producer within the meaning of the statute without utterly disregarding conditions and circumstances which are more than mere forms. Clearly the corporation was not a producer of milk in any ordinary sense. It did not keep cows and draw from them the milk as is done by one who in the real sense produces milk. But beyond this, unless we are absolutely to disregard corporate organization and purposes, this corporation was an institution entirely separated and distinct from those who did produce the milk. It was organized as a corporation under the Business Corporations Law. It was not a voluntary association or organized under the Membership Corporations Law (Cons. Laws, ch. 35). It was organized for several purposes in addition to the one here involved. It took complete title to the milk and cream which was brought to it, had absolute control and ownership of it, and sold to whomsoever its officials desired and collected the pay therefor. It is true that it distributed certain profits amongst those from whom it had purchased milk or cream, but that does not at all alter the fact that it had acquired as against all real producers complete title and control over the product which they had sold and transferred to it. The course of dealing between the association and those who owned the cows and drew the milk, whatever the ultimate purpose, completely detached the title to, ownership and control of the milk from the producer and transferred them to a marketing corporation, and in our judgment there is too distinct and too wide a line of separation between the people who owned the cows and the corporation which took the milk to be overlooked even under the latitude allowed in construing a remedial statute.

If it were necessary we think that the correctness of these views would be materially supported by a certain change which was made in this statute. Originally it provided for the issuance of licenses entitling the licensee to conduct the business of buying milk from " dairymen."

The attorney-general soon rendered an opinion to the effect that the word " dairymen " included any person who sold milk, and that, therefore, all purchasers of milk within the state of New York were required to be licensed. The statute then was changed so as to substitute " producers " for " dairymen " and thereby it seems to be made quite plain that the legislature clearly distinguished between those who produced and those who sold milk, and intended to limit its protection to the former.

We think that the judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division,

CHASE, COLLIN, POUND and ANDREWS, JJ., concur; CARDOZO and CRANE, JJ., dissent.

Judgment reversed, etc.