THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* WILLIAM W. SHOEMAKER, Defendant.*

Supreme Court, Erie County, July 11, 1929.

*Lafay C. Wilkie,* for the plaintiff.

*Donovan & Raichle [Carlos C. Alden* of counsel], for the defendant.

*Seward A. Miller, amicus curiæ,* for Dairymen's League Co-operative Association, Inc.

NOONAN, J. This is an action to recover a penalty for an alleged violation of certain provisions of the Agriculture and Markets Law. It is before the court on a motion for a judgment upon the pleadings for the plaintiff upon the ground that the defendant's answer does not state a legal defense to plaintiff's cause of action. The Dairymen's League Co-operative Association, Inc. (hereinafter called the association), being interested in the outcome of the litigation, was represented by counsel, who submitted a brief.

The defendant is a retail milk dealer in the city of Buffalo, N. Y., and he is accused of selling milk on October 31, 1927, without

* See 134 Misc. 652.

obtaining the license required by article 21 of the Agriculture and Markets Law.

Section 252 of said article (as amd. by Laws of 1927, chap. 416) provides that " * * * No person or corporation buying milk or cream from *producers* shall operate a milk gathering station, manufactory or plant where milk or cream is received or purchased from *producers* for sale or resale, or for manufacture, unless licensed by the commissioner. * * * The applicant shall satisfy the commissioner of his or its character, financial responsibility and good faith in seeking to operate a milk gathering station, manufactory or plant. * * * A license shall not be issued unless the applicant shall execute and file with the application a bond, or shall be relieved from filing of bond as provided in the next section."

The first paragraph of section 253 of said article (as amd. by Laws of 1928, chap. 194) provides that " The bond required by the last section shall be upon a form prescribed by the commissioner, shall be in the sum to be fixed by the commissioner, but not less than two thousand dollars, shall be executed by a surety company authorized to do business in this state, and shall be conditioned for the faithful compliance by the licensee with the provisions of this chapter, and for the prompt payment of all amounts due to producers for milk or cream sold by them to such licensee, during the license year. The bond shall be approved by the commissioner. * * * "

This section* also provides for procedure to be taken when the licensee defaults upon any of the conditions of the bond, and it also gives the Commissioner the power to relieve the person or corporation from the provisions of this section requiring the filing of a bond.

At the time of the alleged violation the defendant had not complied with the aforesaid provisions of said law, nor had he been relieved of his obligation so to do by said Commissioner, and he was buying all his milk and all other dairy products from the association, and not from the actual producers of the dairy products, and had given a bond to secure the payment of his indebtedness to it.

The association is a non-stock co-operative corporation. (Co-op. Corp. Law, arts. 2, 3, 4 and 6.) Under its contract with its members it is the *sole* agent of all their milk and other dairy products, and it is expressly authorized to collect all moneys due from the buyers of said products. The milk that the association receives is all mingled so that the retailer does not regularly get the milk from any one producer, and the losses, if any, from poor debts are borne by all.

---

* See, also, Laws of 1927, chap. 416.— [REP.

The association asks that the court decide that it is a " producer " within the meaning of the statute. This question has been decided adversely to such claim. (*Parker* v. *Dairymen's League Association*, 222 App. Div. 341; *Wilson* v. *Israel*, 227 N. Y. 423.) These decisions are in accord with the facts in the case at bar.

The association also urges that the defendant substantially complied with the law when he gave a bond to it and the *producers whom it represents*. The answer to this argument is that the association has no power to act in place of the Commissioner.

The defendant himself seeks to escape liability on two grounds: (1) That because he buys all his milk and other dairy products from the association and has given security for the payment of his obligations to it, and that because the association commingles all the milk it receives, the Commissioner would be unable to enforce the bond for the benefit of the actual producers; and (2) that the law is unconstitutional.

The answer to the first alleged defense is that there is no assurance, other than defendant's contract with the association, that he will not buy from other people who ought to be protected, and this contract may be broken at any time by the conduct of the parties to it. Also, he cannot avoid a penalty by taking advantage of a situation that he has helped to create. And neither can he, by contracting with the association, in any way obstruct the Commissioner in the proper enforcement of the law.

The claim that the statute is unconstitutional deserves careful consideration. If the decision in *People* v. *Beakes Dairy Co.* (179 App. Div. 942) is controlling, the plaintiff is barred from maintaining this action by section 1177 of the Civil Practice Act. In this case, in July, 1917, the Appellate Division, by a divided court, held that a similar statute was unconstitutional " on the ground that the purpose of the statute is to secure payment for the purchase price of merchandise, and is class legislation, and not a valid exercise of the police power." One judge did not vote, and Presiding Justice KELLOGG wrote a short and forceful opinion upholding the statute.

In the Court of Appeals (222 N. Y. 416) it was held that that complaint must be dismissed because it did " not state facts constituting two hundred and ninety-eight causes of action. Neither does it state facts constituting one cause of action." Judge POUND then discussed at length the constitutionality of the statute; and held that the defendant, a corporation created by statute, could not avail itself of this defense, but he did not pass upon the constitutionality of the law as applied to individuals because the determination of that question was not essential in the decision

of the case. As the matter now stands, this action is not barred by any decision in the *Beakes* case.

Is the law constitutional as to individuals? Since the *Beakes Case (supra)* was decided, many laws of similar import have been passed for the greater protection of the people against fraud and deceitful practices, and have been adjudged constitutional by the courts.

Commission merchants, who act in a fiduciary capacity, are compelled to give security for the honest conduct of their business. This law has never been tested in this State, but a similar law in Kansas was held to be constitutional. (*State ex rel.* v. *Mohler*, 98 Kan. 465; affd., 248 U. S. 112, *sub nom. Payne* v. *State of Kansas ex rel. Brewster*, etc.) (See, also, *State ex rel. Beek* v. *Wagner*, 77 Minn. 483; *State* v. *Bowen & Co.*, 86 Wash. 23.) Real estate and insurance brokers are regulated by license. (*Roman* v. *Lobe*, 213 App. Div. 162.) Auctions may be prohibited during certain hours. (*Alexander* v. *Enright*, 211 App. Div. 146.) The banking business is subject to regulation (*Musco* v. *United Surety Co.*, 196 N. Y. 459, 465; *Engel* v. *O'Malley*, 219 U. S. 128), "because fraud could be practiced in it." The law against misbranding merchandise has been sustained. (*Abounader* v. *Strohmeyer & Arpe Co.*, 217 App. Div. 43, 45; affd., 243 N. Y. 458.) The same is true about the "Blue Sky Laws." (*People* v. *Beakes Dairy Co.*, *supra*, citing *Hall* v. *Geiger-Jones Co.*, 242 U. S. 539; *Caldwell* v. *Sioux Falls Stock Yards Co.*, Id. 559; *Merrick* v. *Halsey*, Id. 568.) Licenses may be required of employment agencies. (*Brazee* v. *Michigan*, 241 U. S. 340, 343; *People ex rel. Armstrong* v. *Warden*, etc., 183 N. Y. 223.)

Other specific cases might be cited, but generally the State has power to reasonably regulate any trade, occupation or calling, if "the general nature of the business is such that unless regulated many persons may be exposed to misfortunes against which the legislature may properly protect them." (*Allen* v. *Riley*, 203 U. S. 347.) It is a matter of common knowledge that milk producers have suffered serious losses in selling to financially irresponsible retail milk dealers. The farmer at a distance from the city finds it very hard to get accurate information in such cases. Why should he not be protected when the law takes care of those who ship vegetables to a commission merchant and those who deal with private bankers and salesmen of worthless stock? It is just as painful to lose the money due for milk as that which has been deposited with a dishonest banker, and the result is the same.

Milk is our most necessary food product, and the State may go far in legislation to insure an adequate supply. As the State may

regulate the hours of labor for the public good (*People* v. *Klinck Packing Co.*, 214 N. Y. 121, 137), so there should be no question about its right to protect those who produce our most used food.

" The State must adapt its legislation to evils as they appear." (McKENNA, J., in *Merrick* v. *Halsey & Co., supra.*)    That is the purpose of the law that is being passed upon.    In the *Beakes Case* (*supra*), Judge POUND says: " To hold a statute unconstitutional is a grave thing to do.    To refuse, by so doing, to recognize a demonstrated evil and to characterize the unusual in legislation as impossible is unwise.    Constitutional law is, ' to a certain extent, a progressive science.' "    (Citing *Holden* v. *Hardy*, 169 U. S. 366, 385.)

My conclusion is that the law in question is constitutional, and the motion for a judgment for the plaintiff upon the pleadings is granted, with costs.