THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ANTONIO PERRETTA, Defendant.

Supreme Court, Oneida County, August 19, 1929.

*Nicholas G. Powers*, for the defendant.

*Hamilton Ward*, Attorney-General [*Pirnie Pritchard* of counsel], for the plaintiff.

* See 134 Misc. 542.

Brown, J. Two actions are brought by the People of the State of New York to recover two penalties for the alleged violation by the defendant of section 252 of article 21 of the Agriculture and Markets Law (as amd. by Laws of 1927, chap. 416) in operating a milk gathering station in the city of Utica in the months of June, 1928, and November, 1928, without a license, as required by said section. Motion is made by the defendant to dismiss each complaint on the ground that the complaint does not state facts sufficient to constitute a cause of action. The defendant contends that the provisions of the Agriculture and Markets Law requiring said license are unconstitutional.

Section 252 of the Agriculture and Markets Law prohibits any person or corporation from operating a milk gathering station, manufactory or plant where milk or cream is received or purchased from producers for sale or resale, or for manufacture unless licensed by the Commissioner. The section requires that an applicant for license shall satisfy the Commissioner of his character, financial responsibility and good faith in seeking to operate a milk gathering station or plant, and shall pay a license fee of ten dollars. No license shall be issued unless the applicant shall execute and file with the application a bond, or be relieved from filing same as provided in the next section. Section 253 of the same act (as amd. by Laws of 1928, chap. 194) provides that the security required shall be a surety company bond in an amount approved by the Commissioner, and shall be conditioned "for the faithful compliance by the licensee with the provisions of this chapter, and for the prompt payment of all amounts due to producers for milk or cream sold by them to such licensee, during the license year." The minimum bond required at the time of defendant's alleged violation in June, 1928, was $5,000. (Laws of 1927, chap. 416.) At the time of the alleged violation of defendant in November, 1928, the minimum amount of bond required was $2,000. (Laws of 1928, chap. 194, in effect September 1, 1928.) With this difference, sections 252 and 253 read the same at times of both alleged violations by defendant. Section 253 further provides that upon default by the licensee in the payment of any money due for the purchase of milk or cream, the creditor may file with the Commissioner a verified statement of his claim, and if the same has been reduced to judgment, a transcript of said judgment. The section then provides: " Upon default by the licensee in any of the conditions of the bond, an action upon the bond shall be brought by the commissioner. All moneys collected upon such bond shall be applied by the commissioner, first, to the payment ratably of all

verified claims promptly filed with the commissioner after reasonable notice to present claims arising during the license period in connection with which the bond was given and the balance shall be paid into the state treasury." The amount of the bond required shall be increased, if the Commissioner finds that the bond given does not adequately protect the producers. Provision is also made for waiving of the bond, if the Commissioner is satisfied from an investigation that the applicant is solvent and possessed of sufficient assets to reasonably assure compensation to probable creditors.

The constitutionality of the provision requiring license and security from milk gathering stations came before the Court of Appeals in the case of *People* v. *Beakes Dairy Co.* (222 N. Y. 416). The statutes were then section 55 and those following of the Agricultural Law. (Laws of 1913, chap. 408, as amd. by Laws of 1915, chap. 651.) The court held the statute constitutional as applied to corporations, under the reserved power in the Legislature to amend corporate charters, but declined to pass upon its constitutionality as applied to individuals, stating that such question was not before the court.

If the statute under consideration limited itself to a requirement that milk gathering stations be licensed, there would be no serious question as to its constitutionality. The nature of the business of milk gathering stations is such that the Legislature, to prevent fraud and misfortune and to act in behalf of the public welfare, would be fully justified under the police power in regulating such a business by requiring a license. (*Brazee* v. *Michigan*, 241 U. S. 340; *Musco* v. *United Surety Co.*, 196 N. Y. 459; *People ex rel. Armstrong* v. *Warden, etc.*, 183 id. 223; *People ex rel. Lieberman* v. *Vandecarr*, 175 id. 440; *Roman* v. *Lobe*, 243 id. 51.)

But the statute under consideration does not stop with regulation and license. Before a license can be issued, financial security must be furnished by the applicant, the proceeds from which are applied, when there has been default, to the payment of debts contracted in the purchase of milk or cream. By requiring security and regulating its amount, the State seeks to compel the payment of bills contracted in the purchase of milk or cream. The State becomes the agency to effect collections in an ordinary business transaction. The purpose of this statute is not to prevent fraud upon an ignorant and illiterate people as was the case of the statute held constitutional in *Musco* v. *United Surety Co.* (196 N. Y. 459). Speaking of this latter statute, the Court of Appeals in the case of *Guffanti* v. *National Surety Co.* (196 N. Y. 452) said (at p. 456): " The said act of 1907 was intended to prevent fraud upon ignorant, dependent and unsuspecting foreigners." Nor does

it seem that the provisions of the Agriculture and Markets Law come within the purposes of the statute requiring license and bond of employment agencies held constitutional in *Brazee* v. *Michigan* (241 U. S. 340). Also the nature of business transacted by a milk gathering station in making outright purchases of milk and cream is unlike that of a commission merchant selling upon commission and acting in a fiduciary relation. In such case a statute forbidding the sale of farm produce on commission without a license, and requiring a bond conditioned to make honest accounting, was held constitutional in case of *State ex rel.* v. *Mohler* (98 Kan. 465; affd., 248 U. S. 112). Neither is the statute under consideration designed to prevent extortion as was the statute dealing with theatre ticket brokers held constitutional in *People* v. *Weller* (237 N. Y. 316). The sections of the Agriculture and Markets Law here being considered were not passed to prevent fraud, extortion or to secure honest accounting. The statute was passed with the avowed and frank purpose of compelling payment for merchandise sold.

I am not unmindful of the fact that the producers of milk and cream have suffered great loss in the past by selling said products on credit to irresponsible persons. Neither am I overlooking the fact that milk is one of our most important, if not the most important food product, and that (to use the words of Presiding Justice KELLOGG in his dissenting opinion in the case of *People* v. *Beakes Dairy Co.*, 179 App. Div. 942) " It is vital to the public welfare that the cities of the State be supplied with pure and wholesome milk." But regulation and license of a business, important to the public welfare, is one thing; guaranty by the State of contract obligation arising out of sale and purchase of commodities is another thing. If such a statute is constitutional, there can be no logical reason why dealers in many other commodities may not be required to give bond before they may engage in business. As stated by Judge POUND (*People* v. *Beakes Dairy Co., supra*, at p. 426): " Constitutional law is ' to a certain extent, a progressive science,' " but I am of the opinion that we are not prepared to embark upon a constitutional doctrine that citizens may carry on ordinary business and trade only when and not until they give adequate security for payment of contract debts. I, therefore, hold that the statute falls outside the scope of the police power.

But should we assume that a requirement that the licensee give financial security is a valid exercise of the police power, still the statute here under consideration would, in my opinion, be invalid because of the amendment to the law in 1927 providing for the dis-

position of the surplus of the amount of bond over and above the claims of creditors. Under section 253 (as amd. by Laws of 1927, chap. 416), the money collected upon the bond is first applied to the payment of claims arising during the license period and then " the balance shall be paid into the state treasury." For example, if a bond of $10,000 was required by the Commissioner, and there was default in the payment of claims amounting to $1,000 and the claims were filed with the Commissioner, then under the statute, the Commissioner out of the moneys collected upon the bond would pay $1,000 to the creditors and $9,000 into the State treasury. "A statute passed pursuant to the police power should be reasonable." (*People* v. *Ringe*, 197 N. Y. 143.) Assuming that security may be required under the police power, is it a reasonable exercise of that power to exact a penalty over and above the amount of the claims due for the purchase of milk or cream? Is it reasonable to provide by law that an individual, who is unable, perhaps temporarily, to pay his creditors, should as a result thereof, see the entire amount of his bond confiscated? And such individual milk dealer will observe that the smaller his default has been the greater is the penalty. The individual who under section 253 might be relieved of the necessity of furnishing bond because the Commissioner was satisfied with his financial condition, would in no event have to pay more than the amount of his contract debts, but the individual who was required to give bond would in case of default see his bond used first to pay his debts and the balance go to enrich the State treasury. And this confiscation would result not because of fraud, not because of deception, but for the non-payment of a bill arising in contract. " It may be stated as a general principle that legislation is valid which has for its object the promotion of the public health, safety, morals, convenience and general welfare or the prevention of fraud or immorality." (*People ex rel. Duryea* v. *Wilber*, 198 N. Y. 1, 8.) Assuming that the requirement as to financial security could be held to fall within one of these purposes, it can hardly be said that the taking of the balance of the bond over and above the debts and paying same into the State treasury has for its object any of the purposes of a statute valid under the police power. Such a statute conflicts with our ideas of constitutional liberty and justice.

For the reasons hereinbefore stated, I am of the opinion that the statute in question is, so far as individuals are concerned, unconstitutional under article I, section 6, of the State Constitution and the 14th Amendment to the Federal Constitution.

Motion to dismiss complaint in each action granted, with ten dollars costs.

Order to be entered accordingly.