### In re ROSETT et al.

#### (Circuit Court of Appeals, Second Circuit. April 14, 1913.)

#### No. 241.

BANKS AND BANKING (§ 15*)—PRIVATE BANKER—SECURITIES—DEPOSIT—PERSONS ENTITLED TO SECURITIES.

General Business Law (Consol. Laws N. Y. 1909, c. 20, as amended by Laws 1911, c. 393) § 25, declares that, except as provided in section 29d. no individual or partnership shall receive bank deposits without license from the comptroller, which shall authorize the transaction of business at any place other than that described in the certificate, except with the comptroller's written approval. Section 29d provides that the foregoing provisions shall not apply to any individual or partnership who would otherwise be required to file a bond with the comptroller, where the business is conducted in a city having a population of 1,000,000 or over. *Held*, that where the bankrupt transacted a private banking business in New York City, and maintained branches in other states. each of which was subject to the laws of the state in which it was located, and not to the laws of New York, the New York depositors were exclusively entitled to the benefit of the $100,000 deposit made by the banker with the comptroller in New York, in the administration of his affairs in bankruptcy.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 12–17; Dec. Dig. § 15.*]

Petition to Revise Order of the District Court of the United States for the Southern District of New York; George C. Holt, Judge.

In the matter of bankruptcy proceedings of Moritz Rosett and Max Rosett, individually and composing the firm of M. Rosett. On petition of Joseph M. Conklin, as trustee, to revise an order of the District Court (203 Fed. 67), reversing a referee's order providing for distribution of the funds deposited by the bankrupts with the

comptroller of the state of New York, and denying a motion for declaration of a dividend. Affirmed.

Olcott, Gruber, Bonynge & McManus, of New York City (L. L. Ernst, of New York City, of counsel), for petitioner.

R. P. Beyer, Deputy Atty. Gen., and Morris Cukor and Archibald Palmer, both of New York City, for respondents.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. Moritz and Max Rosett, partners composing the firm of M. Rosett, were adjudicated bankrupts, both individually and as a firm, in an involuntary proceeding. The firm had carried on the business of private bankers at 197 Stanton street, in this city, and at branches in New Jersey, Pennsylvania, and Ohio. The accounts of all these offices were kept at 114 Liberty street, New York City, where no banking business was done. In accordance with the provisions of sections 25 and 29d of chapter 393, Laws of 1911, amending the General Business Law (Consol. Laws 1909, c. 20), the firm deposited corporate stock of the city of New York of a value of $100,000 with the state comptroller, who, under an order of the District Court, has turned the stock over to the trustee in bankruptcy, who has converted the same into cash. The question in the case is whether this fund is distributable among all the creditors who did banking business with the bankrupts, or only among such creditors as did banking business with them in the city of New York. The referee took the former, and Judge Holt, on a petition to revise, the latter, view. We agree with Judge Holt.

Section 25 provides that no individual or partnership shall engage in the business of receiving deposits of money for safe-keeping, or for the purpose of transmission to another, or for any other purpose, in cities of the first class, except upon certain conditions, among others, the depositing of moneys or securities with the state comptroller and the giving of a bond to him to secure the faithful performance of their engagements in the business. Upon conforming with the provisions of the section, the applicant is entitled to receive from the comptroller a license to do business at the place indicated in it. The section further provides:

"The money and securities deposited with the comptroller as herein provided and the money which in case of default shall be paid on the aforesaid bond by any applicant or the surety thereof shall constitute a trust fund for the benefit of the depositors of the license and of such persons as shall deliver money to such licensee for transmission to another, and such beneficiaries shall be entitled to an absolute preference as to such moneys or securities over all general creditors of the licensee. Such money and securities shall in the event of the insolvency or bankruptcy of the licensee be delivered by the comptroller on the order or judgment of a court of competent jurisdiction to the assignee, receiver or trustee of the licensee designated in such order or judgment."

Section 29d is as follows:

"Exceptions. The foregoing provision shall not apply * * * (5) to any individual or partnership who would otherwise be required to comply with section 25 of this article who shall file with the comptroller a bond in the sum of $100,000 approved by the comptroller as to form and sufficiency,

for the purpose and conditioned as in the said section prescribed, where the business is conducted in a city having a population of 1,000,000 or over and if conducted elsewhere in the state such bond shall be in the sum of $50,-000, or in lieu thereof money or securities approved by the comptroller of the same amount. The provisions of section 29a shall be applicable to such bond or deposit of money or securities."

It is quite clear that the Legislature was regulating the business of banking to be done within the state of New York and was speaking of cities and places within that state. The business the bankrupts were licensed to do within the state of New York was to be done subject to this law, and what business they did in their branches in other states was subject to regulation, not by the laws of New York, but by the laws of those states. Every state has a constitutional right to regulate such business. Engel v. O'Malley, 219 U. S. 128, 31 Sup. Ct. 190, 55 L. Ed. 128. In point of fact, the bankrupts did have licenses from the states of New Jersey and Ohio to do the business of banking within those states. None was required in Pennsylvania.

The bankrupts took advantage of the foregoing exception—29d (5). Although they received no written license as provided in section 25, they were none the less quite as effectually licensed; i. e., in consideration of their compliance with the provisions of the exception they were permitted—that is, they were licensed—to do banking business in New York City. Inasmuch as the exception provides that the securities delivered and the bond given to the comptroller are to be "for the purpose and conditioned as in said section (25) prescribed." their proceeds must now be applied as a trust fund for the benefit of the firm's customers who did deposit with and deliver money to it in New York City. In the language of section 25 it "shall constitute a fund for the benefit of the depositors of the licensee and of such persons as shall deliver money to such licensee for transmission to others. * * *"

It is true that the branches are parts of the main concern, and that all those who dealt with the branches knew that to be the fact, and were creditors of the firm of equal standing. It is also true that the branches made daily reports and forwarded all moneys they received in excess of needs for current expenses to the office of the firm at 114 Liberty street. These facts, however, do not show that the moneys forwarded by the branches were deposits with or deliveries to the firm in New York by the customers of the branches, and do not bring those customers within the protection of this special fund of $100,000.

The decree is affirmed.