### In re DEUTSCHE BROS.

#### (District Court, S. D. New York. February 5, 1915.)

1. BANKS AND BANKING ⬚15 — INSOLVENCY — APPLICATION OF ASSETS — "BENEFIT."

Under Laws N. Y. 1910, c. 348, § 25, as amended by Laws 1911, c. 393, requiring parties engaging in the business of receiving deposits or money for transmission to present to the comptroller a surety bond conditioned upon the faithful holding and transmission of all money, and in the event of the insolvency or bankruptcy of the party, upon the payment of the full amount of such bond to the assignee, receiver, or trustee for the benefit of the persons making deposits or delivering money for transmission, where the amount of the bond of bankrupt private bankers had been paid to their trustee in bankruptcy, the trustee could be authorized to use a part of such fund to save valuable equities in real property of the bankrupt, which otherwise might be lost because of the failure to pay interest, the relative rights of the special class of creditors and the general creditors being properly preserved, as the statute makes no provision for the distribution of the fund by the trustee, and the word "benefit," as used in the statute, is of broad meaning and wide signification.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 12–17; Dec. Dig. ⬚15.

For other definitions, see Words and Phrases, First and Second Series, Benefit.]

2. BANKRUPTCY ⬚138—BANKS—ASSETS—BOND—"TRUSTEE."

Under Laws N. Y. 1910, c. 348, § 25, as amended by Laws 1911, c. 393, requiring a bond from private bankers conditioned for payment in the event of insolvency or bankruptcy to the assignee, receiver, or trustee, in case of bankruptcy the trustee in bankruptcy is the "trustee" intended.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 193–204, 206–209; Dec. Dig. ⬚138.

For other definitions, see Words and Phrases, First and Second Series, Trustee.]

3. BANKRUPTCY ⬚138 — BANKS — ASSETS — BOND — COMPOSITION — FUNDS AVAILABLE.

Under Laws N. Y. 1910, c. 348, § 25, as amended by Laws 1911, c. 393, the amount of the surety bond of bankrupt private bankers, which had been paid to the trustee in bankruptcy, could not be used by the bankrupts in carrying out a plan of composition accepted by a majority of the creditors, under which they were to reopen their business, turning over their net profits to a corporation to be organized under the supervision of the superintendent of banks, and which was to execute notes to the creditors, as the bankrupts never had title to such fund, and the trustee in bankruptcy did not acquire title through them.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 193–204, 206–209; Dec. Dig. ⬚138.]

In Bankruptcy. In the matter of Deutsche Bros., bankrupts. On certificate of the referee, bringing up the question of his power to grant an application by the trustee. Matter referred back to the referee for a conclusion on the merits.

Samuel Hoffman, of New York City, for creditors.
Samuel Strasbourger, of New York City, for bankrupt.

MAYER, District Judge. The bankrupts were engaged in the borough of Manhattan, city of New York, in the business of private bank-

ing, which was conducted pursuant to a license issued to them by the comptroller of the state of New York under the provisions of article 3a of the General Business Law and acts amendatory thereof and supplemental thereto.

Before the issuance of the license to the bankrupts, they, as principals, and the Ætna Accident & Liability Company, executed and delivered to the comptroller of the state of New York their bond in the sum of $100,000 in accordance with the provisions of the act referred to, the salient parts of which will be set forth hereinafter. In due course, Mr. Richards, the superintendent of banks of the state of New York, became trustee in bankruptcy, and thereafter the Ætna Company paid to the trustee the penal amount of the bond, to wit, $100,000.

Heretofore an order was made by the referee requiring the trustee to segregate, and hold in trust for the benefit of persons depositing moneys with the bankrupts, either for the purpose of transmission to others or for the purpose of safe-keeping, the said $100,000, and further requiring the distribution of the sum in special dividends to the persons thereto entitled, and this same order likewise provided for such a dividend of 20 per cent. This dividend of 20 per cent. will use up approximately $60,000, leaving still in the hands of the trustee, out of this $100,000, approximately the sum of $40,000. Exclusive of the money realized from the bond, the assets of the estate in cash do not exceed the sum of $3,000; but there are other assets of the estate, consisting of various parcels of improved real property in the city of New York and within the Southern district. The trustee has had appraisals made, and from these appraisals and his knowledge of the real estate he is convinced that, if the real property can be held for a reasonable time, it, and each parcel thereof, will pay an income, and that such income will be sufficient to pay the fixed charges in the way of interest and taxes. Meanwhile, however, the property is in danger of being lost because of failure of interest, and, in at least one instance, because of an overdue second mortgage, and the consequent result of foreclosure proceedings which are now pending.

The $3,000 in the hands of the trustee will be wholly insufficient to save the real property. Unfortunately, almost all of the creditors of the bankrupts are persons of humble means, who confided their money to these private bankers, either for transmission or safe-keeping. The outstanding liabilities under this head aggregate in the neighborhood of $225,000, while the liabilities to creditors other than this class, such as merchandise creditors, aggregate not to exceed $10,000. The trustee (and he has the co-operation of all concerned) is exceedingly anxious that a plan be worked out whereby, if possible, to save what he believes are valuable equities, to the end that ultimately a much more substantial result will be obtained for the transmission and safe-keeping deposit creditors than if the equities in the real estate should be wiped out and the $40,000 (approximately) remaining out of the money paid over by the Ætna Company should be distributed as dividends to the persons who may be entitled thereto.

At an adjourned first meeting held on November 27, 1914, the bankrupts presented an offer of composition, and a majority in number and

amount of the claims proved accepted the offer of the bankrupts, and such acceptances are on file with the referee. On December 19, 1914, the bankrupts petitioned the referee for an order directing the trustee to deposit the sum of $85,000 out of the funds then in his possession, subject to the order of this court, for the purpose of carrying out the composition. The referee ruled that the $100,000 then in the possession of the trustee, obtained by him from the surety company, could not be used for any purpose other than a direct payment to the persons for whose benefit, under the statute, the money was available.

The plan of composition contemplated the payment of 25 per cent. in cash, and if there were sufficient funds a larger initial payment, in the opinion of the board of directors of a corporation to be formed. The remaining 75 per cent. (or whatever the balance was after making the initial payment) was to be paid in income notes executed by the proposed corporation, which were to be indorsed by the bankrupts, and which were to be payable on or before three years from the date thereof, pro rata, out of the proceeds resulting from the sale of the assets conveyed to the corporation, such pro rata payment to be made semiannually, beginning six months after the date thereof out of such proceeds.

Immediately upon the confirmation of the composition a corporation was to be organized under the Stock Corporation Law of the state of New York, whose affairs were to be managed by a properly selected board of directors. The capital stock was to be transferred to and vested in three trustees, to be appointed by the superintendent of banks, who should hold the same as trustees for the benefit of all creditors, and who should vote the stock for the persons designated as directors of the corporation.

Such steps as were necessary were to be taken to vest in the corporation all the property of the bankrupt estate. The board of directors were to be vested with the full management and charge of the property, and were to liquidate the same as rapidly as possible, paying semiannually to holders of the income notes pro rata such dividend out of the proceeds as they might determine to be advisable. The bankrupts agreed, immediately upon the composition being effected, to reopen the business of selling steamship tickets, money exchange, and money transmission heretofore carried on by them under rules and limitations fixed by the superintendent of banks, and to continue during the term of the adjustment notes to manage and operate the business, and to pay over to the directors of the corporation the net profits of the business, they to receive reasonable compensation for their services, to be fixed by the board of directors. Certain other provisions were incorporated in the offer of composition, which need not now be set forth in detail.

The certificate of the referee brings up the question as to whether there is power to acquiesce in or direct the trustee to use the balance of the $40,000, or any part thereof, for the purpose of paying taxes, interest installments on mortgages, and the second mortgage to which reference has been made. The attorneys for the bankrupts at the same time bring up the question as to whether the referee should be

directed by the court to order the trustee to deposit part of the $100,000 subject to the order of the court, for the purpose of carrying out the composition in the event of it being confirmed by the court.

In other words, the situation is this: If, out of the $100,000 realized from the Ætna Company bond, $85,000 can be utilized for the purposes of the composition, then the composition, if deemed advisable, can go through. (In order to avoid confusion, it may be stated that the $85,000 would be made up of the $60,000 which constituted the 20 per cent. dividend declared for the purpose of relieving the creditors and an additional $15,000.) As part of that situation, and also as an independent proposition, the question is whether any part of $100,000 can be used to save the properties which the trustee believes have substantial equities.

The matter should be dealt with promptly, and therefore, while the question of the composition is not before me on any certificate of review, I have concluded, in order to avoid delay, to state my opinion in reference thereto. I will therefore consider (1) the certificate of review before me, and (2) the power, as matter of law, of the court to direct the trustee to turn over a part of the fund of $100,000 as, in effect, assets which can be considered as part of the offer of composition.

[1] It is provided, among other things, by section 25 of chapter 348 of the Laws of 1910, as amended by chapter 393 of the Laws of 1911, effective June 21, 1911, as follows:

"Except as provided in section 29d, no individual or partnership shall hereafter engage directly or indirectly in the business of receiving deposits of money for safe-keeping or for the purpose of transmission to another or for any other purpose in cities of the first class without having first obtained from the comptroller a license to engage in such business. Before receiving such license the applicant therefor shall file with the comptroller a written statement in the form to be prescribed by the comptroller and verified by the individual or members of the firm making the application, showing the amount of the assets and liabilities of the applicant, designating the place where the applicant proposes to engage in business, that the applicant has been, or if the applicant shall constitute a partnership, that a majority of the members thereof having a controlling interest in the business of such partnership have been continuously for a period of five years immediately preceding the date of such application resident in the United States. Such applicant shall at the same time deposit with the comptroller five thousand dollars if the applicant is engaged only in the business of receiving money for transmission to another and otherwise ten thousand dollars in money or in securities which shall consist of bonds of the United States, of this state or of any municipality thereof, or other bonds approved by the comptroller, and if a deposit of securities shall be so made in lieu of money, the comptroller shall thereafter require the applicant to maintain such deposit at all times at a value which shall equal the sum that the applicant is required by this section to deposit. In addition thereto there shall be presented to the comptroller a bond to the people of the state of New York executed by the applicant and by a surety company approved by the comptroller, conditioned upon the faithful holding of all moneys that may be deposited with the applicant, in accordance with the terms of the deposit and the repayment of such moneys so deposited and upon the faithful transmission of any money which shall be delivered to such applicant for transmission to another, *and in the event of the insolvency or bankruptcy of the applicant, upon the payment of the full amount of such bond to the assignee, receiver or trustee of the applicant, as the case may require, for the benefit of the persons making such deposits and of such persons as shall deliver money to the applicant for transmission to another.*"

In the Matter of Moritz Rosett and Max Rosett, Individually, etc., Bankrupts, Joseph M. Conklin, as Trustee, etc., Petitioner, 204 Fed. 431, 122 C. C. A. 617, the Circuit Court of Appeals for the Second Circuit (April 14, 1913) had this statute under consideration. The question in that case was whether the fund was distributable among all the creditors who did banking business with the bankrupts, or only among such creditors as did banking business with them in the city of New York, and the court held that only those who did banking business with them within the state of New York were entitled to the benefits of the fund. No other case involving the construction of the part of the statute here under consideration has been called to my attention.

The question, therefore, is a new one, and must be resolved in accordance with familiar rules of construction. What the New York Legislature was endeavoring to accomplish was the protection to some extent of the persons making deposits with or delivering money for transmission to these private banks. It undoubtedly realized that the depositors and transmitters are people of small means, and many, and perhaps most, of them of recent foreign origin, who cannot speak English, and who need a great measure of protection. That is precisely the situation in the case at bar, and therefore one of much concern, because of the desire to safeguard the rights of these unfortunate people so far as the law will permit.

[2] In the provision above quoted the Legislature contemplated insolvency or bankruptcy of the banker and used words which were technically correct. Having in mind "the event of the insolvency or bankruptcy" of the banker, it was provided that the payment of the full amount of the bond should be made to the "assignee, receiver or trustee of the applicant, as the case may require." Clearly "trustee" means a trustee in bankruptcy, selected as the statute provides. It will be noted that there is no provision for the distribution of the fund by the trustee. There is nothing in the statute which in so many words commands in kind the distribution of the particular fund, the payment of which by the surety company is required under the bond after insolvency or bankruptcy.

The payment is "for the benefit of the persons" making deposits, and of such persons as shall deliver money to the banker for transmission to another. The word "benefit" is one of broad meaning, and under this statute, in my opinion, of wide signification. The duties of assignees, receivers, and trustees are defined by statute and regulated by rules of court, and these officials are subject to the supervision of the courts, and must account in and to the courts.

In seeking the meaning of a statute, an illustration sometimes is helpful. Let it be supposed that a bankrupt private banker had pledged with some financial institution securities concededly worth $200,000, that the amount of the loan for which such securities were pledged was $100,000, and that by the payment of the loan the trustee, for the benefit of the estate, would receive $200,000 in securities or money, and thereby be able to pay the class to be benefited 100 cents on the

dollar. It is hard to believe that a remedial statute of this character was intended to prevent the appropriate officer in bankruptcy from saving for people needing protection assets which otherwise would be lost.

I think that what is meant by "for the benefit of the persons making deposits and of such persons as shall deliver money to the banker for transmission to another" is benefit of a class of persons, namely, depositors and transmitters, and that this class under the decision in the Rosett Case is confined to those transacting the business in question with the bonded private banker within the state of New York.

I am of the opinion that the Legislature never intended that an assignee, receiver, or trustee should be prevented from using the fund in such manner as would increase the estate, or from applying the fund in such directions as would save assets, where the saving of the assets would be for the benefit of the very class of people for whose protection the statute was enacted. To hold otherwise would be to give the statute a narrow construction, which would impair the useful purpose for which it was designed.

I conclude, therefore, that the referee had power to grant the application of the trustee for leave to apply part of the fund under consideration for the purposes set forth by the trustee in his application. Apparently the referee has considered only the question of law involved, and therefore the matter will be referred back for a conclusion on the merits.

For the guidance of counsel I may say that they should present to the referee a full statement showing the precise condition of each of the properties, which statement should comprehend, among other things, the amount of taxes, interest, income, and cost of maintenance. I may further observe that, if the referee is of opinion that the facts warrant the use of the fund for the purposes desired, there need be no difficulty in preserving the rights of the special class. If this money saves equities in real estate, a lien will be created in favor of the statutory class for whom the trustee will be acting. It will not be troublesome to work out and preserve the relations in this regard between the general creditors and this special class of creditors.

[3] In respect of the proposed composition and the use of part of the $100,000 fund to that end, it must be remembered that the bankrupts never had title to the fund. By the provisions of the statute, the title to this fund becomes vested in the trustee in bankruptcy, and nowhere are the bankrupts in the chain of title, and in no manner can they be said to be the channel through which the title flows. The fact that the bankrupts deposited certain securities with the surety company in order to obtain the bond does not in any manner change the situation. The obligation of the bond is to pay the trustee for the benefit of a certain class described in the statute, and while in the case at bar a majority of the creditors in number and amount have approved the proposed plan of composition, yet the court cannot create title where there never was any.

The result is that the bankrupts cannot use these funds directly or indirectly as a contribution to the assets which would make up the estate intended to be administered in the carrying out of the plan of com-

position, and the referee was right when he refused to sign the order directing the trustee to deposit part of the fund for the purpose of carrying out the composition.

The application of the trustee is returned to the referee for his report on the merits.