■ DON J. WICKHAM, as Commissioner of Agriculture and Markets of the State of New York, Respondent, v. NIAGARA COUNTY MILK PRODUCERS COOPERATIVE CORPORATION, INC., et al., Defendants, and NATIONAL GRANGE MUTUAL INSURANCE COMPANY, Appellant.— HERLIHY, J. This is an appeal by the defendant insurance company from summary judgment granted against it and

in favor of the plaintiff by Special Term, Supreme Court. On October 17, 1963 the National Grange Mutual Insurance Company (hereinafter referred to as National) executed a bond in favor of the plaintiff guaranteeing, *inter alia,* the payment by Windsor Creamery, Inc. (hereinafter referred to as Windsor) of all sums due for the purchase of milk by it pursuant to a license application by Windsor before the Commissioner of Agriculture and Markets. The bond was in the sum of $83,000. On October 22, 1963, the bond was accepted by the Commissioner and Windsor was granted a license limited " to the purchase of milk for resale out of New York State to other dealers for manufacturing purposes." Windsor thereupon commenced purchasing milk from the defendant, Niagara County Milk Producers Cooperative Corporation, Inc. (hereinafter referred to as Niagara) pursuant to an agreement entered into on October 15, 1963. By the terms of this agreement Windsor was to pay Niagara " at the monthly published Class 2F price " and " In the event that any milk is reclassified to Class I, Windsor Creamery, Inc. will pay the difference to the co-operative." In January of 1962, three months subsequent to the first milk delivery, the Market Administrator reclassified the milk sold to Windsor during the preceding October, November and December as Class I and as a result, Niagara was assessed a sum to be paid to the Equalization Fund. On February 5, 1964, Niagara billed Windsor for the amount of the assessment. As of the date of this proceeding the assessment had not yet been paid to the plaintiff. Section 258-b of the Agriculture and Markets Law provides in subdivision 1 that a bond must be filed as was done in this case. In subdivision 2 it provides upon default, which in our case is alleged to be payment of sums due, the Commissioner may determine the amount due and issue a certificate for such amount and thereafter bring an action upon the bond for such amount. The amount set forth in such certificate is presumptively correct. In the instant case the Commissioner has issued such a certificate and duly commenced his action upon the bond. National has in its answer denied the allegation that the principal Windsor failed to pay all amounts due to Niagara and has set forth that the reclassified milk moved in interstate commerce thereby being removed from the jurisdiction of New York State regulations. Special Term granted judgment on the apparent premise that the appellant could not raise a constitutional question and such appears to be the thrust of the respondent's argument in this court. The cases cited concern the issue of a surety challenging the constitutionality of the statute which required the furnishing of bond. The statute here is not attacked but rather that the action of the Commissioner, acting pursuant to reclassification orders (1 NYCRR part 21), is alleged to be arbitrary and capricious. If Windsor owes money to Niagara then presumably National indirectly owes money to Niagara. The Commissioner is in no better position than Niagara whose claim he is attempting to collect. The surety may, of course, assert any defense which its principal had against Niagara. It is clear that the Commissioner is not asserting a debt owing to him under any statute or otherwise. The appellant's first argument that the reclassification is null and void is not available to it since no proceeding was brought to set aside the reclassification under article 78 of the CPLR within four months from such determination. The validity of the reclassification is not in issue here because this is not a proceeding to enforce such reclassification. (Cf. *Wickham* v. *Trapani,* 26 A D 2d 216.) The appellant next contends that the reclassification of milk purchased by Windsor to Class I is a transaction outside the scope of the bond, since this would be a purchase in violation of the terms of the license and the bond was not intended to cover transactions not made pursuant to the terms of license. The Commissioner argues on this point that the bond was to insure that the principal would not violate the license.

Since this action is not one to collect on the bond for a failure of the principal to comply with its license restrictions, the argument of the Commissioner is not applicable. The terms of the bond are not sufficient to determine this issue and therefore we determine that there is an issue of fact to be tried by the court. (See *Consumer-Farmer Milk* v. *Wickham,* 25 A D 2d 413, 415.) Judgment reversed, on the law and the facts, and motion for summary judgment denied, with costs. Gibson, P. J., and Reynolds, J., concur with Herlihy, J.; Taylor, J., not voting; Staley, Jr., J., dissents and votes to affirm in the following memorandum: Respondent seeks to recover from the surety of the defendant, Windsor Creamery, Inc., the sum of $56,318.72. The surety bond was filed by Windsor, as a bonded milk dealer, pursuant to section 258-b of the Agriculture and Markets Law for the license period from October 1, 1963, to September 30, 1964. Windsor, a Vermont milk dealer, contracted with Niagara County Milk Producers Cooperative to purchase milk at the monthly published Class II-F price, and, in the event that any milk was reclassified to Class I, Windsor agreed to pay the difference to Niagara. The plaintiff-respondent, the Commissioner of Agriculture and Markets of the State of New York, reclassified the milk sold by Niagara to Windsor for the months of October through December, 1963, from Class II-F to Class I, and, as a result, certified the claim of Niagara for the difference in price in the sum of $56,318.72. The basis for the reclassification was the finding by the Commissioner that the milk sold by Niagara to Windsor left the Niagara plant in fluid form and satisfactory proof was not furnished to the Commissioner to sustain another classification. Section 21.20 (b) of the Rules and Regulations of the Department of Agriculture and Markets (1 NYCRR 21.20 [b]) provides that: "Any milk which leaves a pool plant in the form of fluid milk may be classified other than as Class I only to the extent that satisfactory proof is furnished to the commissioner that such milk was actually used in a product or products named in such other class or classes, and that such milk was not ultimately delivered to consumer, store or restaurant in fluid form except as provided in subdivisions (e) and (f) of this section." There was no "satisfactory proof furnished to the Commissioner in opposition to his order of reclassification of the milk sold from Class II-F to Class I, and no proceeding was instituted to review the Commissioner's determination within four months after the date of such determination. Pursuant to its certified claim, Niagara billed Windsor for the amount of $56,318.72, which sum Windsor has failed and refused to pay. Thereafter, the Commissioner demanded payment of said sum from the defendant, National Grange Mutual Insurance Company, which defendant has failed and refused to pay. The Commissioner thereafter instituted this action pursuant to subdivision 2 of section 258-b of the Agriculture and Markets Law. The appellant has asserted, as an affirmative defense in its answer, that all the milk purchased by Windsor from Niagara in the months of October, November and December of 1963 was disposed of by Windsor outside of the State of New York and thereby was used in interstate commerce and not subject to the provisions of the Laws of the State of New York. The issuance of the bond sued upon here was for the sole purpose of enabling Windsor to obtain a license to purchase milk for utilization outside of New York State. The sole transaction contemplated by Windsor's application for a license was interstate in nature and this appellant secured by issuing its bond. Under such circumstances, the surety cannot repudiate its bond by raising constitutional questions. It is well settled that an individual may waive even constitutional provisions for his benefit when no question of public policy or public morals is involved. (*Musco* v. *United Surety Co.,* 196 N. Y. 459, 464.) Since Windsor agreed to pay the difference in price of any reclassified milk, it cannot now repudiate its agree-

ment having never sought review of the reclassification. The appellant is in no better position than Windsor to avoid the obligation arising from the agreement of its principal. The majoriity of the court holds that issues of fact are present which require a trial. In my opinion, there is nothing in appellant's answer either by way of denial or affirmative defense which raises any triable issues of fact or which places the merits of the reclassification order in issue. In the case of *Consumer-Farmer Milk* v. *Wickham* (25 A D 2d 413), which dealt in part with the authority of the Commissioner to regulate the sale of milk and the licensing of milk dealers, the court states (p. 415): " Implicit in appellant's contention is the thesis that the requirement of a license to operate there or elsewhere in New York is in derogation of the Commerce Clause and therefore unenforcible; but the interest of a State in the welfare of its producers and consumers of milk is authoritatively recognized as sufficient to warrant and validate (in the absence of Federal regulation) the imposition of appropriate licensing and bonding requirements and, indeed, price regulation, even though interstate commerce be incidentally or indirectly burdened thereby. (*Milk Bd.* v. *Eisenberg Co.*, 306 U. S. 346.) " The appellant further contends that the reclassification of milk purchased by Windsor from Class II-F to Class I, in effect, releases the surety because the surety only guaranteed the payments due by Windsor for purchases under the conditions of its limited license. Appellant argues that if Windsor did in fact purchase milk which could be classified as Class I, such purchases were not within the intent of the parties, on the execution of the bond and would constitute an alteration in the obligation, thus releasing the surety. The undisputed facts leave no doubt regarding the intention of the parties. Prior to the execution of the bond, Windsor agreed, in writing, with Niagara to pay the Class I price " in the event that any milk is reclassified to Class I." This agreement and the bond filed to insure performance was Niagara's protection against the violation of the terms upon which the limited license was issued. Windsor has failed to establish compliance with the terms of the license and is liable for the claim asserted by the Commissioner. The surety standing in the place of the principal in a suit brought pursuant to subdivision 2 of section 258-b of the Agriculture and Markets Law is likewise liable to the Commissioner. The judgment should be affirmed, with costs.