THE PEOPLE OF THE STATE OF NEW YORK ex rel. BOARD OF SUPERVISORS OF THE COUNTY OF ROCKLAND, Relator, *v.* EUGENE M. TRAVIS, as Comptroller of the State of New York, Respondent.

Third Department, November 13, 1918.

Tax — State lands in Rockland county — reduction of assessment by Comptroller — statutory construction — chapter 149 of Laws of 1911 and section 440 of Education Law construed.

Chapter 149 of the Laws of 1911, relating to the assessment and taxation of State property in Rockland county, does not authorize the State Comptroller to review the assessments made in said county, and to pay only so much of the taxes as he shall deem warranted by the assessments as he conceives they should have been made.

There is no rule of statutory construction which permits of the segregation of a single sentence from its context and making such isolated sentence the basis of a conclusion.

Section 440 of the Education Law, relating to the authority of the State Comptroller to correct or reduce any assessment of State lands in Rockland county for school purposes, is no justification for his action in refusing to pay general taxes on State lands in such county as fixed by the assessment rolls.

CERTIORARI issued out of the Supreme Court and attested on the 12th day of May, 1917, directed to Eugene M. Travis, as Comptroller of the State of New York, commanding him to certify and return to the office of the clerk of the county of Rockland all and singular his proceedings had in reducing a bill for taxation.

*E. W. Hofstatter*, for the relator.

*Merton E. Lewis, Attorney-General* [*Wilber W. Chambers, Deputy Attorney-General*, of counsel], for the respondent.

WOODWARD, J.:

Chapter 149 of the Laws of 1911 provides that " all lands in the county of Rockland heretofore or hereafter acquired for a public use by the State of New York, as provided by law, shall be assessed and taxed in the towns where situated for State, county, town, village, school and highway purposes in the same manner as other real property owned by persons and individuals in such towns and villages." It obviously provides simply that the State of New York, owning lands in Rockland county for public purposes, shall be treated the same as any other owner of lands in that county; its property shall be subject to assessment and taxation the same as any other individually-owned property. This means, of course, that it shall be assessed at its true value, whatever that may be; and if the act had stopped here it is possible that the learned Comptroller would have found no authority for the action here under review.

But the act, for the obvious purpose of preventing any abuse of the assessing power in behalf of the State, and to protect Rockland county in its revenues from this source, further provided that " the assessed valuation of the lands so acquired shall not be reduced below the assessed valuation of such lands at the time they were acquired, until the bonds and other indebtedness of such towns and villages and the county of Rockland, outstanding at the time this act takes effect, shall be fully paid, nor shall the assessed valuation of such lands include the improvements, if any, erected thereon by the State." And the learned Comptroller, called upon to pay the amount of the taxes levied in Rockland county, has held that because the statute provides that the assessed valuation shall not be reduced, that it may not be increased above the assessed value at the time it was acquired, and has cut down the audit $2,776.09. The only question presented upon this review is whether the statute authorizes the Comptroller to review the assessments made in Rockland county, and which constitute a judicial determination, and to pay

only so much of the taxes as he shall deem warranted by the assessments as he conceives they should have been made. So important a power in a ministerial officer ought not to be assumed; there should be clear statutory authority at least, and we find none in the act. The various assessors in Rockland county, in making the assessments, are governed by the General Tax Law of the State, except that they are to make assessments against the State for the lands which it owns, and they are forbidden to lower the assessments prevailing at the time the lands were taken during a prescribed period. There is no other special limitation on their powers, and there is not the slightest suggestion in the statute that there is to be any review of their action in making such assessments, other than that provided by the general law.

It is true the act refers to section 440 of the Education Law, and counsel calls our attention to the fact that this section, dealing with school taxes in Rockland county, provides that "No such assessment of State lands shall be valid for any purpose until the amount of the assessment is approved by the Comptroller," but we may not even assume that this was intended to enlighten the court, for no rule of construction permits of the segregation of a single sentence from its context and making such isolated sentence the basis of a conclusion. The provision in which this sentence is found is subdivision 3 of section 440 of the Education Law (Consol. Laws, chap. 16; Laws of 1910, chap. 140), and it provides that after " the trustees have made the assessment and their tax-list therefor, such trustees shall immediately file in the office of the Comptroller a duly verified copy of such tax list, which in addition to the other matters now required by law shall state which are lands belonging to the State. The Comptroller shall within thirty days after the receipt of such list and after hearing the trustees, if they or any of them so desire, correct or reduce any assessment of State lands which may be in his judgment an unfair proportion to the remaining assessment of land within the district, and shall in other respects approve the assessment and communicate such approval to the trustees," and it is in connection with this provision that the sentence above quoted is used. Obviously it conveys no such idea as is suggested. But if it did, chapter 149 of the Laws of

1911 is not controlled in the matter here under consideration by the Education Law. The taxes involved in this proceeding are the general taxes of Rockland county, which are provided for by chapter 149 of the Laws of 1911. That act provides that " all lands which have heretofore been purchased by the State in the county of Rockland, subsequent to the assessment thereof in any year by the board of assessors of the town wherein such lands are situated, although prior to the levying of the taxes for that year upon such assessment, are hereby made subject to the lien of the taxes so levied, and all such taxes shall be paid by the State to the treasurer of the county of Rockland; *and the provisions of section four hundred and forty of the Education Law,* so far as the provisions of this act are not in conflict therewith, *shall govern the assessment, levy and collection of school taxes* on such State lands in said county." The assessments made for school purposes in Rockland county, no doubt, are subject to the provisions of section 440 of the Education Law. The Comptroller, during a period of thirty days after receiving a school district tax roll, may revise the same in reference to its relation to other property in the school district, but he cannot, after the taxes have been thus provided for, arbitrarily assume to cut down the amount of taxes, and this provision relates entirely to school districts; it has no bearing upon the assessments made for State, county, town and village taxes, such as are involved in this proceeding. There is absolutely no justification in this statute for the action of the Comptroller in refusing to pay the taxes to the county of Rockland upon the values of the State lands as fixed in the assessment rolls, and the relator is entitled to the relief demanded.

The determination should be reversed.

All concurred.

Determination reversed and matter remitted to the Comptroller to audit the relator's claim at the full amount claimed by the relator, together with interest on the various items of taxes from the time that the same became due and payable to the relator, with fifty dollars costs and disbursements to the relator.