In the Matter of the Petition to Set Aside the Election of Directors of the LAWRENCE-CEDARHURST BANK Held on January 14, 1936.

Supreme Court, Special Term, Nassau County, February 7, 1936.

*Pettit & Pettit [Carl Peterson* of counsel], for the petitioners.

*Conklin & Bentley [Kenneth M. Spence* of counsel], for the respondents.

HOOLEY, J. This is an application by three stockholders, Clinton Street Realty Corporation, J. Carl Schmuck and John A. Ruth, pursuant to section 25 of the General Corporation Law, to review the election of directors at the annual meeting of stockholders of Lawrence-Cedarhurst Bank held on January 14, 1936, and to set aside and have decreed null and void the election of Kenneth M. Spence, Harry Zalkin, Raymond Chauncey, Douglas W. Morgan, Herbert Frankel, Robert L. Hamill and Milton S. Harrison as directors, and that it be declared that Charles Elliott Warren, George W. Craft, Percy C. Vandewater, Sidney Nordlinger, Frank G. Holly, Harry Holden and Joseph C. Zavatt were duly and legally elected directors, or that the said election be declared irregular, null and void and set aside and a new election of directors be ordered by the court.

The question involved is solely one of law. At the meeting it appears that certain holders of certificates of beneficial interest issued by said bank voted at the annual meeting for the election of directors over the objection of the petitioners, with the result that with the assistance of such votes the said Kenneth M. Spence and the six associates named with him above received a majority of the votes cast while if such votes of the holders of said certificates were excluded then the said Charles Elliott Warren and the six associates named with him above received a majority of the votes cast. The question, therefore, turns on the right of the holders of the certificates of beneficial interest to vote at an annual stockholders' meeting held at a time some two years after the reorganization meeting.

The bank commenced business in January, 1903. Following the bank holiday in 1933, it reopened only on a restricted basis. In May, 1933, the directors applied to the Superintendent of Banks for leave to reorganize and resume business under the provisions of section 61 of the Banking Law, as amended by chapter 21 of the Laws of 1933.

Under this plan of reorganization, there were issued to the depositors certificates of beneficial interest totalling $581,197. Since the issuance of these certificates, $83,439.40 has been paid on account of the principal, leaving a balance of $497,757.60 in certificates outstanding on January 14, 1936. On the face of each certificate it was provided that the holder thereof had the option to surrender the certificate and receive therefor stock of said bank

in accordance with the provisions of said section 61 of the Banking Law.

Section 61 of the Banking Law, prior to 1933, comprised about six lines and merely authorized the Superintendent of Banks to permit banks to resume business under certain conditions that might be approved by him. In February, 1933, at a time when the banking situation in the United States was becoming chaotic, the Legislature added subdivision 2 to the section (Laws of 1933, chap. 21). That subdivision provided that the Superintendent might in his discretion, if he deemed it in the interest of the depositors and others interested in its affairs, surrender possession and permit it to be reopened and to resume its relationships and the conduct of its business on such terms and conditions as might be agreed upon between him and its board of directors, subject to the provisions of some nine paragraphs or subdivisions numbered respectively (a) to (i), inclusive.

The general scheme of these subdivisions deals in part with the determination by the Superintendent of Banks as to the amount of sound assets and the depositor's proportion of his deposit which is subject to withdrawal and the issuance to the depositor of certificates of beneficial interest for that proportion of his deposit not subject to withdrawal at the time of such reopening. The provision for payment on such certificates of interest at three per cent per annum before any dividends can be paid on the capital stock is then considered. Then follows subdivision (e) which is the portion of the statute to be construed herein.

Subdivision (e) provides as follows:

" (e) Within sixty days after a bank or trust company has resumed business as provided in this subdivision of this section, there shall be called in accordance with its by-laws or as the superintendent may direct a meeting of its stockholders and holders of such certificates, who shall elect directors who shall succeed the former directors. The board of directors so elected shall elect officers who shall succeed the former officers. Former directors and officers shall be eligible at such elections. Each registered holder of such certificates shall be entitled to vote as though the unpaid principal amount of such certificates represented stock of the same par value."

Subdivision (f) provides that the holders of such certificates shall have the option at any time upon the surrender thereof, duly indorsed to such bank or trust company, to receive therefor stock of such bank or trust company at the book value thereof as shown by the last preceding official examination of the Superintendent.

In construing subdivision (e) of section 61 it is necessary to keep in mind certain principles and rules of statutory construction. The decision herein must necessarily turn on the question whether the following sentence contained in subdivision (e) applies only to the reorganization meeting held within sixty days after the bank resumed business or whether it was a general provision applicable to all meetings while there were any outstanding certificates of beneficial interest. That sentence reads as follows: " Each registered holder of such certificates shall be entitled to vote as though the unpaid principal amount of such certificates represented stock of the same par value."

It is the general rule of statutory construction that a provision must be given the meaning which harmonizes best with the context. (*People ex rel. Mason* v. *McClave*, 99 N. Y. 83.)

As was said by Mr. Justice WOODWARD in *People ex rel. Board of Supervisors of Rockland County* v. *Travis* (184 App. Div. 730; affd., without opinion, 226 N. Y. 703): " no rule of construction permits of the segregation of a single sentence from its context and making such isolated sentence the basis of a conclusion."

In *Seligman* v. *Friedlander* (199 N. Y. 373), Mr. Justice VANN, writing for the court, said: " Construction will not be based on a single section, which, when read by itself, appears to overturn a well established principle of the common law, but that section will be read in connection with all the commands of the Legislature relating to the matter and the intentions thus gathered from its command as a whole." The sentence now under discussion is a part of a paragraph which has to do only with the reorganization meeting in the process of opening a closed bank — a meeting required to be held within sixty days after the bank resumes business. It is inconceivable that the Legislature, if it had intended that the sentence in question should apply to all meetings, would have placed such provision in a paragraph which by its context clearly indicates that it had reference only to a reorganization meeting. It is also inconceivable that the Legislature, if it had the intent contended for by the respondents, should have failed to indicate that intention in any other section of the Banking Law, or that it should have failed to more clearly indicate such intent by the use of a few simple and apt words.

The whole scheme of section 61 must be taken into consideration in order to properly construe the statute. It has to do with the reorganization of a closed bank in order that it may resume business. It was apparently the intent of the Legislature to provide a way in which these certificate holders could have some voice in the affairs of the bank. The scheme provided is plain. The

reorganization meeting was to be held very soon after the bank reopened. It might be held so soon thereafter that certificate holders would scarcely have time in which to decide whether to exercise their option to exchange their certificates for stock, and so the Legislature provided that at this reorganization meeting certificate holders might vote for directors. Could the certificate holders vote thereafter? Yes, provided they converted their certificates into stock in the manner provided by subdivision (f). It was the obvious intent of the Legislature to induce certificate holders to convert their certificates into stock. But what certificate holder would convert his certificate into stock, if he might get his three per cent, avoid double liability, and still have all the rights of the stockholder and none of the liabilities? If the certificate holder desired to vote for directors after the reorganization meeting and take part in the management of the bank, a way was provided for him. But, if he chose those benefits, he must assume the corresponding burdens. If he desires to take part in the management of the bank, he must become a stockholder. He must assume the double liability then existing. He must give up his preferential three per cent. If he and his associates could control the management of the bank by voting by virtue of these certificates without any of the responsibilities of stockholders, how unfair that would be to the stockholders who could be made liable for the failure of the bank by being assessed for the amount of their stock through the votes of certificate holders who were in no way similarly liable. Certainly that was not within the contemplation of the Legislature. The intention of the Legislature becomes more obvious as the discussion proceeds.

Chapter 21 of the Laws of 1933, which amended section 61 of the Banking Law, which added section 2 thereto with its numerous subdivisions, was entitled: " An act to amend the Banking Law, in reference to the resumption of business by a bank or trust company of which the Superintendent has taken possession pursuant to section fifty-seven of the Banking Law."

It is well settled that guides to construction which appear in the title of the acts must be considered in arriving at a construction. The words " in reference to the resumption of business " have a significant meaning. Keeping in mind that the resumption of business must have commenced before the reorganization meeting could be held and that such reorganization meeting must be held within sixty days after the resumption of business has commenced, the words in the title of the statute (Laws of 1933, chap. 21): " An act * * * in reference to the resumption of business," clearly indicates that the statute was intended to apply in a

limited way to the operation of the bank in connection with its reorganization and resumption of business and was not intended to apply to the operation of the bank generally years thereafter.

It is reasonable to suppose that if the Legislature intended to make such a radical change in the law as to provide generally that certificate holders should have the same right to vote as stockholders without limit of time, it would so have expressed its meaning in the language which the importance of the subject demanded and with a clarity that would leave the meaning of the statute unmistakable — a result which could have been obtained by the use of a few simple words.

It is to be observed that section 120 of the Banking Law provides that the rights, powers and duties of stockholders of banks shall be as prescribed in the General Corporation Law and the Stock Corporation Law and that section 122 of the Banking Law requires that notice of the annual meeting of stockholders of a bank shall be given as required by the Stock Corporation Law. Section 45 of the Stock Corporation Law, which provides for the notice to be given to stockholders, was not amended in 1933 or subsequently so as to provide that notice of the annual meeting of stockholders should be given to certificate holders after the reorganization meeting. Section 47 of the Stock Corporation Law provides for the qualification of voters at meetings and provides that every stockholder of record shall be entitled to one vote for every share of stock standing in his name on the books of the corporation. This section was not amended in 1933 or subsequently so as to indicate any legislative intent to change the long-established rules governing annual meetings of stockholders.

The letter from the Superintendent of Banks giving his construction of the statute under discussion is not binding on this court. He cites no authority. As was said by Mills, J., in *Matter of Tuckahoe Home Building & Loan Assn.* (81 Misc. 33): " It is manifest that the contrary decision of the prior superintendent cannot be binding upon the present superintendent or upon any justice of this court."

The acquiescence of the petitioners in permitting certificate holders in the past to vote at other than the organization meetings does not estop them from raising the question now. If this were so, it would be impossible ever to correct a wrong procedure. The statute governs the procedure. The violation thereof in the past does not make the procedure valid now.

The applicants have cited the decision in *Weddell* v. *Ritchie* (10 Ont. L. R. 5). The Ontario statute stood alone and was not part of a general legislative scheme. It gave certain railroad bond-

holders the right to vote for stockholders when the interest on the bonds was in default. The end aimed at there was to permit bondholders to take part in the management of the company when the interest on the bonds became in default. True, in words the statute referred to the next general annual meeting of the company next ensuing after a default. The court construed that to mean at any meeting after a default. To give that statute any other meaning would be to declare that it was the legislative intent that because the bondholders did not act at the next meeting after default their right to vote was gone forever although with each successive default the reason for the bondholders having the right to vote became more urgent. How different that case is from the case at bar where the obvious intent of the Legislature was to leave open to the certificate holders the right to vote, provided they converted their certificates into stock, and assumed the constitutional liability of bank stockholders, a consummation to be wished for in the case of this bank.

I feel that if the Legislature intended what the respondents claim, it is for it to say so and not leave it to the court to legislate.

In view of the foregoing, it is not necessary to decide whether the statute giving certificate holders the right to vote at any meeting is constitutional.

I am of the opinion that the procedure at the annual meeting of stockholders, in so far as it related to the election of directors, was illegal. The ruling declaring the questioned directors elected is declared null and void. I confirm the election of the eleven candidates who received the majority of the stockholders' votes.